Daniel T. FRONCZAK, Plaintiff–Appellant,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Defendant–Appellee.

No. 00–7513.

United States Court of Appeals, Second Circuit.

Feb. 8, 2001.

Daniel T. Fronczak, pro se.

Alicia R. Ouellette, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York, Albany, NY, for appellee.

Present GRAAFEILAND, CALABRESI, Circuit Judges, and PATTERSON, Judge.*

SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DE-

* The Honorable Robert P. Patterson, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

CREED that the judgment of the district court be and hereby is AFFIRMED.

Plaintiff-appellant Daniel T. Fronczak appeals from the judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*) granting summary judgment for defendant-appellee New York State Department of Correctional Services ("DOCS") with respect to Fronczak's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112–12117, and under 42 U.S.C. § 1983 for retaliatory adverse employment actions. We affirm.

## BACKGROUND

In 1993, Fronczak was a correctional officer employed by DOCS at the Wyoming Correctional Facility ("the facility"). He became critical of the facility's handling of hazardous waste materials and filed several grievances concerning the matter.[1] He also began "exhibiting both bizarre and threatening behavior." On or about March 15, 1993, DOCS Assistant Personnel Administrator Terry Baxter requested that Fronczak undergo a psychiatric examination to determine his ability to perform the duties of his job. Doctors Jeffrey Bernstein and Richard Ciulla examined Fronczak for the Employee Health Service ("EHS") on March 29, 1993. During Dr. Bernstein's examination, Fronczak "readily acknowledge[d]" that he had engaged in such behavior as "having loud conversations with himself, slamming doors, punching walls, and throwing things at work." Dr. Bernstein determined that Fronczak was "in need of psychiatric care." And he concluded that "[Fronczak] was a risk for not being able to manage the inmates, possibly even losing control,

further control of his emotions and his temper, and having difficulty working with co-workers .... [t]hat he was unable from a psychiatric perspective to continue his duties as a corrections officer." On April 1, 1993, Fronczak was informed of this determination, and he was placed on an involuntary leave of absence. Fronczak unsuccessfully appealed the determination to the Civil Service Commission. At an administrative hearing held in conjunction with that appeal, Fronczak, according to the hearing officer's report, again did not deny the alleged behaviors.

In 1996, Fronczak requested a reevaluation and consideration for a return to active duty employment with DOCS. Three EHS doctors examined Fronczak and found that, despite some idiosyncratic behavior, he was fit to perform the duties of a corrections officer. Pursuant to a DOCS policy applicable to individuals absent from active employment for over one year, Fronczak was required to undergo seven weeks of retraining prior to resuming active employment. On August 18, 1996, shortly after Fronczak arrived for retraining at the DOCS academy, he had an altercation with an instructor. In response to Fronczak's refusal to hem his pants, the instructor told him that he was free to leave if he did not want to follow the rules of the academy. Fronczak responded with profanity, gathered his belongings, and departed.

A few days later, DOCS sent Fronczak a letter warning him that an absence of ten days would be considered, pursuant to a collective bargaining agreement, a constructive resignation. Eleven days after he left the academy, Fronczak contacted DOCS regarding the letter, and he was

---

1. Fronczak also claims that he filed suit in the New York State Supreme Court complaining of DOCS' handling of hazardous wastes. There is no evidence in the record, however, of such a suit.

duly informed of its meaning. A few days later, DOCS notified Fronczak by mail that his ten-day absence had been construed as a constructive resignation, and that his employment with DOCS was terminated.

After pursuing state administrative remedies through the Civil Service Commission and federal administrative remedies through the Equal Employment Opportunity Commission ("EEOC"), Fronczak filed suit in the district court. A liberal reading of his complaint reveals the following alleged causes of action: (1) by placing Fronczak on involuntary leave in 1993 and terminating him in 1996, DOCS retaliated against Fronczak's exercise of his First Amendment rights, in violation of 42 U.S.C. § 1983, for his complaints concerning its waste management; (2) the same 1993 involuntary leave and 1996 termination resulted from discrimination on the basis of a perceived mental disability in violation of the ADA.

The case was referred to Magistrate Judge Hugh B. Scott, and DOCS moved for summary judgment. The magistrate judge found that Fronczak failed to establish a *prima facie* case that he had been discharged either as the result of discrimination on the basis of a perceived disability or of retaliation. Rather, the judge concluded, "[t]he undisputed record reflects that ... plaintiff was discharged because he failed to show up for work." Finding evidence of neither discrimination on the basis of a perceived mental disability nor retaliation for Fronczak's waste complaints, the magistrate judge recommended granting defendant's motion for summary judgment. The district court adopted the magistrate judge's report and recommendation and dismissed the suit. That court also noted that Fronczak produced no evidence in the record of any

New York State Supreme Court action regarding the facility's handling of waste.

Fronczak appeals.

## DISCUSSION

We review a grant of summary judgment *de novo*, resolving all ambiguities and drawing all inferences in favor of the nonmoving party. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128–29 (2d Cir. 1996). Summary judgment is appropriate when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.*

■ In order to state a claim of retaliation for the exercise of First Amendment rights, plaintiff must demonstrate: "[1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action." *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000) (internal quotation marks omitted) (alterations in the original). In light of Fronczak's admission of bizarre and threatening behavior, there is no genuine factual dispute regarding his incapacity to perform the duties of a correctional officer in 1993. As a result, there is no evidence of a causal connection between Fronczak's hazardous waste complaints and his placement on involuntary leave at that time. Moreover, as to the 1996 termination, we agree with the magistrate judge and the district court that there is no evidence that Fronczak was discharged for any reason other than his ten-day absence from the training academy.

■ In assessing ADA claims, we apply the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Heyman v. Queens Village Comm. for*

*Mental Health,* 198 F.3d 68, 72 (2d Cir. 1999). Under that framework, a plaintiff must satisfy the minimal burden of making out a *prima facie* case of discrimination; the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions; and the final burden rests on the plaintiff to prove that the proffered nondiscriminatory reason was pretextual and that the defendant discriminated against the plaintiff.

▆ To establish a *prima facie* case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id.* One definition of "disability" under the ADA is "being regarded as having . . . an impairment" that "substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(C); *see* 29 C.F.R. § 1630.2(i) (defining major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

▆ At the moment, states are subject to the ADA,[2] so Fronczak has established the first element of a *prima facie* claim as to both the 1993 involuntary leave and the 1996 termination. Because, however, there is no evidence that Fronczak's 1996 termination was for any reason other than his absence from the training program, plaintiff has not fulfilled his initial burden as to that employment action.

▆ The 1993 involuntary leave requires somewhat more extended discussion. As to the second element—that Fronczak was disabled within the definition of the ADA—the inability to perform a particular job or class of jobs does not qualify as a substantial limitation on the major life activity of work. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491–92, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). DOCS' determination that Fronczak was "unable to perform the essential duties of a Correction Officer" indicates that it considered him unfit for only that particular job and hence does not meet the ADA standard. Moreover, even if we allow that DOCS' recognition that Fronczak required psychiatric care might indicate a perception that he was disabled within the definition of the ADA, Fronczak did not establish the final two elements of a *prima facie* case. The "bizarre and threatening behavior" that he concedes he exhibited is inappropriate in a corrections officer—one responsible for the safety and well-being of inmates. By his acknowledgment of such behavior, Fronczak is unable to demonstrate that he was "otherwise qualified" to perform the duties of a corrections officer or that he was placed on leave as a result of an ADA disability.

▆ In any event, assuming *arguendo* that Fronczak has presented a *prima facie* case of discrimination on the basis of a perceived mental disability in 1993, DOCS has come forward with a legitimate nondiscriminatory explanation for placing him on involuntary leave at that time, namely that he was not capable of performing the essential job duties of a corrections officer. And Fronczak has not presented any evi-

---

**2.** The Supreme Court has granted certiorari in a case that raises the issue of whether the ADA is a valid abrogation of the states' Eleventh Amendment immunity to private dam-

ages actions in federal court. *See Garrett v. University of Alabama,* 193 F.3d 1214 (1999), *cert. granted,* 529 U.S. 1065, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000).

dence, in reply, indicating that DOCS' proffered explanation was a pretext for discrimination.

## CONCLUSION

We have considered all of Fronczak's claims and find them without merit. The judgment of the district court is therefore AFFIRMED.[3]

---

3. Fronczak has also made a retaliation claim under state law. *See* N.Y. Civil Service Law § 75–b(2). The district court did not discuss that claim in granting summary judgment and dismissing the suit in its entirety. Under the circumstances, we treat the state claim as dismissed without prejudice to be brought in state court. *See* 28 U.S.C.A. § 1367(c)(3); *Castellano v. City of New York*, 142 F.3d 58, 74 (2d Cir.1998).