[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Commission on Human Rights and Opportunities ("CHRO"), appeals[1] from a January 25, 2001 final decision rendered by a human rights referee of the CHRO in favor of the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"). In his complaint to the CHRO, Jeffrey Clark, the complainant, alleged that he was demoted due to his physical disability in violation of General Statutes § 46a-60 (a)(1) and the Americans With Disability Act ("ADA"), 42 U.S.C. § 12101 et seq. as protected by General Statutes § 46a-58 (a). The CHRO's appeal from the decision CT Page 26 of the human rights referee is authorized by General Statutes §§ 46a-94a
and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
Clark filed his complaint with the CHRO on June 11, 1998. (Return of Record ("ROR"), Volume 4, Item 64, pp. 541-43.) The CHRO certified the complaint to a public hearing on September 9, 1999; public hearings were conducted before a human rights referee on July 25-27, 2000. The human rights referee issued her final decision on January 25, 2001, making the following relevant findings of fact:
 1. [Clark] suffers from a speech impediment [related to cerebral palsy]. . . .
* * *
 3. [Clark] began employment with [Wal-Mart] in Cromwell, CT on or about May 27, 1997, as a stock person at the rate of $6.00 an hour. . . .
 4. [Clark] was employed with [Wal-Mart] from May 1997 through February 1, 1999. . . .
* * *
 6. Mrs. Elizabeth Wolfson-Ruiz was the training assistant and assistant manager and Mr. John Leone was the store manager for [Wal-Mart] in Cromwell during [Clark's] employment. . . .
 7. Jerry Lancto was also an assistant manager during [Clark's] employment . . .
 8. Mr. Lancto told [Clark] that he was doing a good job in his current position as a stock person. . . .
 9. [Clark] received a ninety (90) day associate evaluation on or about August 2, 1997, at which time he received an "above standard" rating and a thirtysix (36) cent pay increase from his supervisor, Mrs. Elizabeth Wolfson. . . .
 10. When [Clark] complained about being out in the cold as a stock person, [Wal-Mart] transferred him to the position of cashier with a twenty-five (25) cent increase in pay on or about November 6, CT Page 27 1997. . . .
 11. On or about November 22, 1997, [Wal-Mart] temporarily transferred [Clark] to the Claims department with a fifty (50) cent increase in pay. . . .
 12. While [Clark] was working in the Claims department, Mr. Lancto had allowed [Clark] to help out in the furniture department. . . .
 13. [Clark] received an "Employee of the day" award in June 1997 and an "Employee of the month" award in August 1997. . . .
* * *
 15. [Clark] asked Mr. Leone and Mr. Lancto to promote him to the Furniture department manager position. . . .
 16. On or about December 3, 1997, [Clark] was temporarily assigned to the furniture department as the manager until December 5, 1997, when the incumbent manager returned. [Clark] was promoted to the Furniture department manager position with a pay increase of $1.50 per hour when the incumbent resigned on or about December 16, 1997. . . .
 17. The promotion to the Furniture department manager position was documented on an associate commendation form signed and dated by [Clark] and Mr. Leone on December 19, 1997. . . .
 18. Mr. Lancto was [Clark's] coach and supervisor when he was promoted to Furniture department manager until some time in January 1998 when Mrs. Wolfson-Ruiz became [Clark's] coach and assistant manager. . . .
(ROR, Volume 1, Item 1, pp. 4-7.)
In paragraphs 19-20, 22-25, the human rights referee set forth in detail the knowledge, skill and ability that Clark had to possess for the position of manager in the furniture department as well as the primary CT Page 28 responsibilities of the job. In paragraph 32, the referee set forth the typical duties of a furniture department manager, including: checking on department sales, removing freight and filling up the shelves, handling Point of Sale ("POS") review sheets, scanning labels with a "telxon," and making price changes.
The human rights referee continued as follows:
 21. In order to qualify for the Furniture department manager position, [Wal-Mart] requires that an individual must be able to perform each essential duty satisfactorily . .
 26. [Clark] learned the Furniture department manager position's description, qualification and requirements by taking the Computer Based Learning modules ("CBLs") and tutorials on the computer at [Wal-Mart's] store, which he took one month after being in the position. . . .
 27. [Clark] was fully aware of the duties and responsibilities of the Furniture department manager position. . . .
 28. [Clark] possessed no sales floor experience prior to receiving his promotion to Furniture department manager. . . .
 33. [Clark] watched other managers performing their duties and received assistance from these managers to do certain aspects of his job. .
 34. [Clark] prepared for inventory by making certain that everything was out and labeled and that the overstock was labeled. .
 35. [Clark] put items on the shelf and other items in the back room. He also organized the shelves and ordered new items. . . .
 36. [Clark] used a hand held device (telxon) which he called a scanner to "scan outs" which was ordering items. . . .
 37. Mrs. Wolfson-Ruiz observed the following problems in the furniture department while [Clark] was the CT Page 29 manager:
 • Late or incomplete paperwork regarding the turning in of POS order and return sheets;
• Late price changes;
• Fact tags . . . not matching; and
• Freight left on the floor. . . .
 38. During his employment, [Clark] also had a difficult time communicating with customers and lifting things; he received help from co-workers . . .
 39. [Clark] missed deadlines and received oral warnings more than once a week during his time as the Furniture department manager. . . .
 40. [Clark] knew what the "modules" as a job task were and received help in doing them. . . .
 41. [Clark] knew that "zoning" entailed keeping the department clean and organized but did not perform this function. . . .
 42. [Clark] received help with the paperwork in his work mailbox but did not know what the paperwork was. . . .
 43. [Clark] did not know the meaning of the term Store Within a Store, also known as. . . .
44. [Clark] did not know what POS sheets were. . . .
 45. In March 1998, [Wal-Mart] demoted [Clark] to a sales associate position in the Housewares department and in April 1998, his pay was reduced to $7.11 an hour. . . .
* * *
 48. [Wal-Mart] stated that the reason for the demotion was [Clark's] performance and attendance. . . .
CT Page 30
* * *
 53. Mrs. Wolfson-Ruiz repeatedly spoke to [Clark] in an informal setting (on the sales floor) about problems she observed that he was having in the furniture department. Mrs. Wolfson-Ruiz never coached or spoke to [Clark] in a formal setting (off the sales floor) regarding those problems . . .
 54. [Clark] never received the benefits of [Wal-Mart's] coaching policy and therefore, was demoted contrary to the . . . policy. . . .
(ROR, Volume 1, Item 1, pp. 9-16.)
Based upon these findings of fact, the human rights referee concluded that Clark had not established a prima facie case of discrimination, because he did not "show that he was a qualified individual with a disability, as that phrase is defined by the ADA, at the time of the adverse employment action." (ROR, Volume 1, Item 1, p. 28.) While the referee found that Clark did have the requisite skill, experience, and education, she concluded that Clark had not proven that he was able to perform the essential elements of the position.[2] (ROR, Volume 1, Item 1, p. 36.) The CHRO has appealed from this dismissal. Since the CHRO alleged, and there is evidence in the record, that Clark was demoted and that his complaint was dismissed, aggrievement is found.
The court reviews the CHRO's claims on this appeal under the substantial evidence test. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable . . ." (Citations omitted; internal quotation marks omitted.)Adriani v. Commission on Human Rights Opportunities, 220 Conn. 307,314-15 (1991).
 We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183 (j)(5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative CT Page 31 findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . This substantial evidence standard is highly deferential.
(Citations omitted; internal quotation marks omitted.) Salmon v. Dept. ofPublic Health Addiction Services, 58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926 (2000); Ames Dept. Stores, Inc.v. Commission Human Rights and Opportunities, 45 Conn. Sup. 276, 283, aff'd., 48 Conn. App. 561, cert. denied, 245 Conn. 924 (1998) (in applying the substantial evidence test, court defers to agency's decision on matters of proof).
As to the human rights referee's conclusions of law, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . ." (Citations omitted; internal quotation marks omitted.) MacDermid, Inc. v. Dept. ofEnvironmental Protection, 257 Conn. 128, 137 (2001).
Turning to the merits of the appeal, neither party differs with this statement of the human rights referee analyzing the structure of an ADA case:
 When there is no evidence of a direct discriminatory statement, the McDonnell Douglas/Burdine model for disparate treatment is applied. The indirect evidence/disparate treatment approach was articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) and further refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56
(1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The burden shifting scheme of McDonnell Douglas applies to the ADA and [General Statutes §§ 46a-58, 46a-60]. Sutherland v. New York, 216 F.3d 1073 (2nd Cir. 2000); Ann Howard's Apricots Restaurant, Inc. v. CHRO, 237 Conn. 209, 225 (1996); CT Page 32 Miko v. Commission on Human Rights and Opportunities, 220 Conn. 192, 203 (1991).
(ROR, Volume 1, Item 1, pp. 25-26.)
Nor do the parties differ over the initial burden on a complainant as stated by the referee:
 In order to make out a prima facie case of discriminatory adverse employment action under the ADA, the Complainant must prove that: (1) the employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation[3] and (4) he suffered an adverse employment action because of his disability. Millane v. Becton, 84 F. Sup.2d 282, 285
(D.Conn. 1999) citing Ryan v. Grae Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). The Connecticut courts and this tribunal follow the same analysis. . . . [citing Miko and Ann Howard's Apricots, supra].
(ROR, Volume 1, Item 1, p. 26.)
The human rights referee concluded that Clark did not meet the third point stated above in that he did not demonstrate that he could perform the essential functions of his job; since he did not satisfy the requirements of a prima facie case, there was no need to proceed to the other burden-shifting elements of an ADA case, and his complaint was dismissed. (ROR, Volume 1, Item 1, p. 36.)
The CHRO has limited this appeal to two issues — whether the human rights referee as a matter of law and fact concluded incorrectly that Clark did not present a prima facie case. If successful on these points, the CHRO argues that Wal-Mart is liable under the remaining portions of the McDonnell Douglas burden-shifting test.
The key element of the prima facie case here required Clark to prove that he was "`otherwise qualified' for a position as a [furniture department manager]. An individual is otherwise qualified for a position if he is able to perform the essential functions of the position, with or without a reasonable accommodation. . . . The Supreme Court defines an individual as `otherwise qualified' if he `is able to meet all of a [position's] requirements in spite of his handicap.' School Bd. of NassauCounty v. Arline, 480 U.S. 273, 287 n. 17 (1987). . . . The determination of whether the employee is otherwise qualified as of the CT Page 33 date of termination is based on a prospective comparison of the employee's ability to perform and the abilities of non-disabled individuals to perform." D'Amico v. New York, 132 F.3d 145 (2d Cir. 1998), cert. denied, 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151
(1998).
See also Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 140 (2d Cir. 1995); Willis v. Anthem Blue Cross Blue Shield, U.S. District Court, District of Connecticut, Docket No. 3:00CV00297 EBB (November 1, 2001, Burns, J.): "An individual who cannot perform the essential functions of a job, either with or without reasonable accommodation assistance, is not a `qualified person with a disability' under the ADA."
Thus, Clark carried the initial burden of proving that he could perform the essential functions of his job. The human rights referee correctly refers to Clark's burden in her final decision. (See, e.g., ROR, Volume 1, Item 1, pp. 28, 30.) On pages 27-28 of her decision, the referee also stated: "In Cole v. Millard, 116 F.3d 465 (2d Cir. 1997), satisfactory performance is performing the job at a level which meets legitimateexpectations of the employer." (Emphasis added.) (ROR, Volume, Item 1, pp. 28-29.) The CHRO makes this quotation to Cole the basis of its appeal on the ground of an error of law.
In the case of Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87,91-92 (2d Cir. 2001), modified, 2001 U.S.App. Lexis 15058, cert denied,___ U.S. ___, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001), the Appeals Court criticized the District Court to the extent that it made part of the prima facie case a showing that in addition to ability to perform the elements of the job, the plaintiff "satisfies the employer." The prima facie case does not contain such a requirement; such a formulation wrongly anticipates the employer's legitimate, non-discriminatory reason for its action.[4] Slattery does note, however, that such language is not a significant error, "so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." Id.
Here, the human rights referee specifically reviewed the record to determine whether Clark "could perform the essential elements of the Furniture department manager position with or without reasonable accommodations based on the "primary responsibilities' listed in the department manager description and the Respondent's explanation of how the job is done in practice. . . ." (Citations omitted.) (ROR, Volume 1, Item 1, p. 31.) She also states that "[t]he Complainant did not bother to prove this prong of his prima facie case that he was qualified other than to argue that he was qualified because he was promoted to the CT Page 34 position. . . ." (ROR, Volume 1, Item 1, pp. 32-33.) These statements indicate clearly that the referee was not using the heightened standard of proof rejected in Slattery.[5]
 Slattery is also relied upon by the CHRO for the proposition that all that plaintiff had to do was to demonstrate "basic eligibility' for a position at issue. Slattery v. Swiss Reinsurance America Corp., supra, 248 F.3d 92. From this, the CHRO argues (Brief of the Plaintiff CHRO, p. 15) that a prima facie case under the ADA does not include a requirement that the complainant can perform the essential elements of his job.Slattery cannot serve as precedent for that principle. Whatever the prima facie case may be for an ADEA[6] plaintiff, as in Slattery, "[a]n ADA plaintiff bears the burden of proving that [he] is a "qualified individual with a disability' — that is, a person "who, with or without reasonable accommodation, can perform the essential functions' of [his] job. 42 U.S.C. § 12111 (8)." Cleveland v. Policy Management SystemsCorp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). ADA cases decided in the Second Circuit after Slattery continue to state the ability to perform essential tasks as an element of the plaintiffs prima facie case. See, e.g., Lovejoy-Wilson v. Noco Motor Fuel, Inc.,263 F.3d 208, 217 (2d Cir. 2001).
The second issue raised by the CHRO is that the human rights referee erred as a matter of fact in concluding that the plaintiff did not meet the performance element of his prima facie case. The referee found that Clark "did not bother to prove this prong of his prima facie case. . . ." (ROR, Volume 1, Item 1, p. 32.) In addition, the record contains evidence that Clark admitted not knowing what the term "store within a store," meant and did not know what POS sheets were. (ROR, Volume 7, Item 67, pp. 1098, 1104.) These concepts were part of the essential tasks of the furniture department manager. (ROR, Volume 6, Item 66, p. 766; Volume 10, Item 104, p. 1821.) Clark's admission of this lack of knowledge shows that he was "unable to demonstrate that he was "otherwise qualified' to perform the duties of [furniture department manager]. . . ." Fronczak v.New York State Department of Correctional Services, 2 Fed. Appx. 213 (2d Cir. 2001); Mendes v. Jednak, 92 F. Sup.2d 58, 65 (D.Conn. 2000).
As indicated, it is not enough for an ADA plaintiff to meet his burden because that he was entitled to advancement at the time of his promotion. Here, there is no dispute as Lancto testified that Clark earned his position by virtue of his prior performance, (ROR, Volume 5, Item 65, p. 679), but this does not establish a prima facie case.[7]
Since there is sufficient evidence to support the conclusions of the human rights referee that Clark did not meet his prima facie case, the court will not proceed to the further portions of the burden-shifting CT Page 35 analysis, and the appeal is dismissed. Morris v. Tri-Town TeachersF.C.U, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 354839 (July 13, 2000, Melville, J.); Diaz v. HousingAuthority of Stamford, 258 Conn. 724 (2001).
Henry S. Cohn, Judge