Kyer L. BEACHUM, Plaintiff,

v.

AWISCO NEW YORK and Local 810, International Brotherhood of Teamsters, Defendants.

No. 09 Civ. 7399(RJS).

United States District Court, S.D. New York.

March 16, 2011.

88

Neal Brickman, Esq., and Richard Norman Jefferson, Esq., The Law Offices of Norman Brickman, New York, NY, for Plaintiff Kyer L. Beachum.

Tonianne Florentino, Esq., Adam Michael Harris, Esq., and John Patrick Keil, Esq., Collazo, Florentino & Keil, L.L.P., New York, NY, for Defendant AWISCO New York.

Mark Anthony Torres, Esq., Long Island City, N.Y. and Dana Lynne Henke, Esq., Barnes, Iaccarino, Virginia, Ambinder & Shepherd, P.L.L.C., Elmsford, NY, for Defendant Local 810.

### MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Kyer L. Beachum brings this action against his former employer, AWISCO New York ("AWISCO"), and the union local that represented some of AWISCO's employees, Local 810, International Brotherhood of Teamsters ("Local 810" or the "Union"). Plaintiff alleges that AWISCO and the Union discriminated against him because of his race and retaliated against him for his complaint of discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1866, 42 U.S.C. § 1981(b) ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 *et seq.* ("NYCHRL"). He further alleges that the Union breached its duty of fair representation, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Before the Court are AWISCO's motion for judgment on the pleadings or summary judgment, the Union's motion for judgment on the pleadings or summary judgment, Plaintiff's motion to amend the Complaint, Plaintiff's second motion to amend the Complaint, and the Union's so-called "motion to deny Plaintiff's motion to seek leave to amend the Complaint." For the reasons that follow, the Court: (1) grants AWISCO's motion for summary judgment on Plaintiff's claims pursuant to Title VII, Section 1981, and the NYSHRL; (2) grants the Union's motion for summary judgment on Plaintiff's claims pursuant to Title VII, Section 1981, the NYSHRL, and Section 301; (3) declines to exercise supplemental jurisdiction over Plaintiff's claims pursuant to the NYCHRL; (4) denies Plaintiff's motions to amend as futile; and (5) denies the Union's curious motion as moot.

### I. Background

#### A. Facts [1]

Plaintiff, an African–American male, was hired by AWISCO in February 2007 as a "dock helper." (AWISCO 56.1 ¶ 2; Union 56.1 ¶ 12–2.) AWISCO is a supplier of gases, welding equipment, safety supplies, and industrial equipment. (AWISCO 56.1 ¶ 1.) Local 810 is the exclusive bargaining agent of AWISCO employees pursuant to a Collective Bargaining Agreement between the Union and AWISCO dated May 14, 2005 to May 13, 2010 (the "CBA"). (AWISCO 56.1 ¶ 4; Union 56.1 ¶ 3; *see also* Certification of Mark A. Torres dated May 14, 2010, Doc. No. 50 ("Torres Cert."), Ex. 1 (the "CBA").)

Article I of the CBA defines the bargaining unit at AWISCO as "[a]ll drivers, *pumpers and warehousemen* as described in the job descriptions attached as 'Schedule C, *exclusive of* office clericals, nonworking supervisors, watchmen and guards, salesmen, repair shop employees,

---

1. The following facts are taken from the parties' Local Rule 56.1 statements and the affidavits and exhibits attached thereto. Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no admissible evidence to controvert that fact.

porters, receiving clerks, counter person[s], *dock helper[s]* and stock clerk[s].' " (CBA, art. I (emphases added).) According to the Schedule C job descriptions, warehousemen are to "load and unload trucks, pull orders, inventory stock, [and] handle customer returns" (*id.*, Schedule C), while pumpers are to "fill and mix high pressure gases, fill cryogenic liquids, evaluate condition of cylinders, check test dates of cylinders, label cylinders, check and confirm with vendor liquid levels of bulk cylinders, keep inventory of cylinders on platform, help vendors load and unload cylinders, help customers, perform minor repairs to cylinders and filling system, and help drivers load and unload trucks." (*Id.*) Schedule C does not provide a job description for dock helpers, presumably because they are not covered by the CBA. Article I states that "[b]argaining unit work shall only be performed by bargaining unit employees." (*Id.*, art. I.) Another provision of the CBA, Article XXVII, states that a "regular employee who engages in any work covered by Article I hereof must become a member of the Union." (*Id.*, art. XXVII.)

Plaintiff contends that "he was subjected to racially motivated jokes on the loading dock." (Pl. Opp. at 3.) Specifically, at his deposition, Plaintiff testified that his supervisor, Richard Wolynlec, and the shop steward, Anthony Kruithoff, made jokes along the lines of "[b]lack people this, Al Sharpton that." (*See* Declaration of Richard Jefferson dated June 11, 2010, Doc. No. 59 ("June 11 Richardson Decl."), Ex. A., at 7:7–22.) Plaintiff stated that he did not recall any specific comments, or when the comments were first made, but that Wolynlec made them "[a]bout twice a week." (*See id.* at 8:5–9:15.) In his deposition testimony, Kruithoff denied that jokes were made about African–Americans. (*See* Affirmation of Adam Harris filed May 14, 2010, Doc. No. 36 ("Harris Aff."), Ex. 13, Deposition of Anthony Kruithoff at 66–67.) Wolynlec said most of the jokes were made about Wolynlec's weight. (*Id.*, Ex. 11, at 22–23.)

While he was employed as a dock helper, Plaintiff contends he performed the duties of a pumper, though he admits he did not possess the license required to do such work. (*See* Pl. Response to AWISCO 56.1 ¶ 6.) Plaintiff contends that at some point in 2007, Kruithoff told Plaintiff that he was "doing union work" and that Plaintiff should "[g]o to the union." (June 11 Richardson Decl., Ex. A. ("Pl. Dep."), at 22–23.) Plaintiff told his fellow employee Carl Wray that Kruithoff was going to get him into the Union. (June 11 Richardson Decl., Ex. B., at 24.) Wray testified at his deposition that he told Plaintiff that Plaintiff was not going to be allowed to join the Union and to leave it alone. (*See id.* at 25–26.)

On February 28, 2008, Plaintiff applied for membership in the Union. (*See* Union 56.1 ¶ 8; Complaint ¶ 39.) In a letter dated March 6, 2008, Plaintiff's attorney demanded that the Union "grieve [the] matter" of his Union membership. (*See* Complaint, Ex. C, at 1.) The letter stated that there was "evidence of discrimination within the company as well as the Union." (*Id.*) On March 12, 2008, the Union filed a grievance, contending that Plaintiff should be allowed to join the Union as a pumper since he was performing Union duties. (*Id.* ¶ 13; Union 56.1 ¶ 10.) AWISCO denied the grievance, arguing that Plaintiff was a dock helper, which was not a union position. (AWISCO 56.1 ¶ 15; Union 56.1 ¶ 12.) In response, the Union submitted the dispute to arbitration on an expedited basis. (AWISCO 56.1 ¶ 15; Union 56.1 ¶ 13.) A hearing was held on May 20, 2008 before an arbitrator, at which time the parties presented testimony and evidence. (AWISCO 56.1 ¶ 16.)

On May 23, 2008, the arbitrator issued his Arbitration Award. (Union 56.1 ¶ 11(2); *see* Torres Cert., Ex. 6 (the "Award").) The arbitrator found that "the grievant Kyer Beachum was hired on 2/12/07 as a dock helper and this job title is expressly excluded from the bargaining unit by virtue of Article I of the parties' CBA." (Award at 2.) The arbitrator further found that the testimony did not "credibly establish that the grievant in the absence of having a pumper's license performs all of the essential duties of a pumper on a regular basis." (*Id.*) However, the arbitrator ruled that "the grievant for limited parts of his daily work assignment performed some of the less skilled job duties as a pumper" and ordered AWISCO "to cease and desist from assigning or permitting the grievant to perform either bargaining unit work and[/]or duties." (*Id.* at 3.)

In the wake of the arbitrator's decision, two other AWISCO employees, Frank Guzman and DeJesus Saez, were allowed to join the Union. (*See* Pl. Counter to Union 56.1 ¶ 27.) Both men are Hispanic. (*Id.* ¶ 10.) Guzman had worked as a warehouseman for nine years before being admitted into the Union, while Saez had worked as pumper for six years. (*Id.* ¶ 24.)

Previously, on February 11, 2008, Plaintiff suffered an injury at work while lifting a propane tank. (AWISCO 56.1 ¶ 11.) Plaintiff went on a leave of absence and began receiving workers' compensation payments. (*Id.* ¶ 12.) For the next eight-and-a-half months, Plaintiff remained out of work. (*Id.* ¶ 27.) In April 2008, a consultant who had examined Plaintiff informed AWISCO's worker's compensation insurance carrier that Plaintiff could return to work on light duty. (*See* Pl. Response to AWISCO 56.1 ¶ 32; Amended Declaration of Richard Jefferson dated May 17, 2010, Doc. No. 46, Ex. M.) Nevertheless, at no time prior to October 2008 did Plaintiff provide AWISCO with medical clearance to return to work. (AWISCO 56.1 ¶¶ 27–28.) In September 2008, AWISCO hired James Ingrassellino, a Caucasian male, to fill Plaintiff's dock helper position. (*Id.* ¶ 32; Pl. Response to AWISCO 56.1 ¶ 32.) Ingrassellino, who remains employed as a dock helper at AWISCO, is not a member of the Union. (AWISCO 56.1 ¶¶ 33–34.) In October 2008, Plaintiff asked Wolynlec if he could return to work because his insurance had run out. (*Id.* ¶ 29.) Wolynlec told Plaintiff to contact Lloyd Robinson, the CEO at AWISCO, and Wolynlec sent an e-mail to Robinson informing him of Plaintiff's call. (*Id.* ¶ 31; Pl. Response to AWISCO 56.1 ¶ 34.) Robinson and Plaintiff did not speak to each other; Plaintiff contends he called twice but his calls were not returned. (Pl. Response to AWISCO 56.1 ¶ 34.)

On October 27, 2008, AWISCO fired Plaintiff. (AWISCO 56.1 ¶ 34.) The dismissal letter stated that Plaintiff's "Family and Medical Leave expired on May 6, 2008. It is our understanding that you have not been medically cleared to return to work and, due to the need to fill the position[,] your employment with AWISCO is terminated effective today." (Pl. Counter to Union 56.1 ¶ 3.) Two days after he was terminated, Plaintiff obtained a doctor's note saying he could return to work. (AWISCO 56.1 ¶ 35.)

**B. Procedural History**

On June 6, 2008, while he was still on leave, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC"), claiming that AWISCO and the Union discriminated against him on the basis of his race and color by denying him membership in the Union. (AWISCO 56.1 ¶¶ 23–

24.) The EEOC issued a right to sue letter on May 26, 2009. (*Id.* ¶ 25.)

Plaintiff filed his Complaint in this Court on August 21, 2009, and the case was assigned to the docket of the undersigned. On May 14, 2010, Plaintiff filed his initial motion to amend his Complaint. The same day, AWISCO filed its motion for judgment on the pleadings or for summary judgment. On May 18, 2010, Plaintiff filed his second motion to amend. On May 19, 2010, the Union filed its motion for judgment on the pleadings or for summary judgment. The Union filed its motion to deny Plaintiff's motion on June 11, 2010. All motions were fully briefed by June 25, 2010.

## II. MOTIONS FOR SUMMARY JUDGMENT

Both Defendants have filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. At the outset, the Court converts both motions into motions for summary judgment. Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Additionally, if the court chooses to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985) (citation omitted); *accord Sira v. Morton,* 380 F.3d 57, 68 (2d Cir.2004). Here, as all

parties have submitted declarations and Local Rule 56.1 statements in their papers in support of or opposition to Defendants' motions, the Court will treat Defendants' motions as ones for summary judgment pursuant to Rule 56.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *accord Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007) (internal quotation marks omitted).

■ "[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in "cases involving allegations of employment discrimination." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir.2006). However, even in an employment discrimination case, "a plaintiff must provide more than conclusory allegations to resist a mo-

tion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.2000).

## A. Claims Against AWISCO

AWISCO seeks summary judgment on Plaintiff's claims for race discrimination and retaliation pursuant to Title VII, Section 1981, the NYSHRL, and NYCHRL.

### 1. Race Discrimination Claims [2]

#### a. Applicable Law

Plaintiff argues that AWISCO discriminated against him on the basis of his race by denying him membership in the Union and subsequently terminating him. Because Plaintiff has not presented any direct evidence of discriminatory animus,[3] the Court will review Plaintiff's various discrimination claims[4] under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In the first step of this framework, the employee bears the burden of producing evidence sufficient to support a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this burden as "minimal"

and "*de minimus.*" *See, e.g., Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). To establish a *prima facie* case of discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for the position he held, (3) an adverse employment action, and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir.2010).

Second, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Rather, a defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *Id.* at 255, 101 S.Ct. 1089.

Third, if the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons,

---

**2.** The Court considers Plaintiff's claims under the NYCHRL against both Defendants in Section C, *infra.*

**3.** The Second Circuit has noted that "direct evidence" in this sense would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory, and that such evidence is typically unavailable in employment discrimination cases. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir.2001). The

Court finds no such evidence in the record in the instant case.

**4.** "The same substantive standards apply to claims of employment discrimination under Title VII, § 1981, and the NYSHRL." *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597(DLC), 2010 WL 4513298, at *7 (S.D.N.Y. Nov. 10, 2010) (citing *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)).

but were a pretext for discrimination.'" *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (internal quotation marks omitted). In determining whether the articulated reason for the action is a pretext, "a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170–71 (2d Cir.1993).

### b. Analysis

For the reasons set forth below, the Court grants AWISCO's motion for summary judgment as to Plaintiff's Title VII, Section 1981, and NYSHRL racial discrimination claims.

### i. Step One—*Prima Facie* Case

For the purposes of its motion, AWISCO does not dispute that Plaintiff was a member of a protected class, that he was qualified for the position he held, and that he suffered adverse employment actions when he was denied membership in the Union and later terminated. (*See* AWISCO Mem., at 11–12.) However, AWISCO contends that Plaintiff has not made a sufficient showing that either adverse action occurred under circumstances that give rise to an inference of discrimination. (*Id.* at 12.)

In his opposition papers, Plaintiff argues he has established this required inference by demonstrating "the existence of limits ... on union membership and of union representation" because "all of the affected employees are minorities" and, after Plaintiff made his complaint, two Hispanic co-workers—Guzman and Saez—were allowed to join the Union while he was still excluded. (Pl. Opp. at 15–16; Pl. Counter AWISCO 56.1 ¶ 10.) "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003) (internal quotation marks omitted). In order to demonstrate disparate treatment, a plaintiff must show that he was "similarly situated in all material respects to the individuals with whom [h]e seeks to compare h[im]self." *Id.* (internal quotation marks omitted). "When plaintiffs seek to draw inferences of discrimination by showing that they were 'similarly situated in all material respects' to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir.2001) (citation omitted). The question of whether two employees are similarly situated is generally a triable issue for the factfinder. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) Nonetheless, a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees. *See, e.g., Hayes v. Kerik*, 414 F.Supp.2d

193, 204 (E.D.N.Y.2006); *Spiegler v. Isr. Disc. Bank of N.Y.*, No. 01 Civ. 6364(WK), 2003 WL 21983018, at *2 (S.D.N.Y. Aug. 19, 2003) ("A court can properly grant summary judgment [on a discrimination claim] where no reasonable jury could find the similarly situated prong met." (citing *Harlen Assoc. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n. 2 (2d Cir.2001))).

 In this case, Plaintiff has not presented sufficient evidence of disparate treatment. To the extent Plaintiff is arguing that members of minority groups in general were excluded from Union membership while similarly situated Caucasian employees were allowed to join the Union, he points to no evidence of any Caucasian employees being allowed to join the Union at the same time he sought entry. Indeed, it is undisputed that the majority of the members of the Union were members of minority groups. (*See* AWISCO 56.1 ¶ 36.)[5]

To the extent Plaintiff argues that he was treated differently than Guzman and Saez, he has failed to present sufficient evidence for a reasonable jury to find that the three men were similarly situated. Guzman and Saez held different positions from Plaintiff, working as a warehouseman and pumper, respectively, while Plaintiff was a dock helper. (Pl. Counter AWISCO 56.1 ¶ 10; AWISCO 56.1 ¶ 2); *see, e.g., Howe v. Town of Hempstead,* No. 04 Civ. 656(DRH) (ETB), 2006 WL 3095819, at *8 (E.D.N.Y. Oct. 30, 2006) (finding that plaintiff who worked as laborer was not

similarly situated to employees working as mechanics, plumbers, and carpenters). Under the Collective Bargaining Agreement between the Union and AWISCO, both the pumper and warehouseman positions are explicitly included in the bargaining unit, while the dock helper position is explicitly excluded. (*See* CBA, art. I.)[6] This is a critical, material difference in a case that is ultimately about Plaintiff's ability to join the Union, and would preclude any reasonable jury from finding the similarly situated requirement met. The employee most similarly situated to Plaintiff—Ingrassellino, the Caucasian male who replaced him as dock helper—is also not a member of the Union. (*See* AWISCO 56.1 ¶ 33.)

 Plaintiff argues, with regard to his NYCHRL claim only, that Plaintiff "was subjected to racially motivated jokes made in his presence" and that "[o]ther workers confirmed that Defendant[s] permitted open hostility towards minorities." (Pl. Opp. at 21.) The Court will construe this argument to also apply to Plaintiff's other discrimination claims. The law is clear that a plaintiff may demonstrate indicia of discrimination by providing evidence of his employer's criticism of his performance in ethnically degrading terms and the employer's invidious comments about others in the employee's protected group. *See Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir.2009). "Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a

---

**5.** Plaintiff also argues an inference of discriminatory intent is created by demographic data. (*See* Pl. Opp. at 16.) But he provides no citation or source for his assertion that the population of Queens is "more than 20%" African–American. The Court disregards this unsupported allegation on summary judgment.

**6.** Plaintiff argues that dock helpers cannot be explicitly excluded, because Article XXVII of the CBA requires regular employees who performed covered work to become Union members. (*See* PL Response to AWISCO 56.1 ¶ 4.) However, at the very least, persons whose job titles are expressly included in the bargaining unit are not similarly situated to someone who is arguing he should be allowed into the Union through Article XXVII.

nexus exists· between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Silver v. N. Shore Univ. Hosp.*, 490 F.Supp.2d 354, 362 (S.D.N.Y.2007). The Court is to "assess the remarks' 'tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.'" *Galimore v. City Univ. of N.Y. Bronx Cmty, Coll.*, 641 F.Supp.2d 269, 284 (S.D.N.Y.2009) (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir.2007)). The Court looks to several factors to make this determination: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process. *Silver*, 490 F.Supp.2d at 363.

■ Plaintiff's allegations about racist remarks fail to create the required inference in this case. In his deposition, Plaintiff could offer no specifics about the comments made by Wolynlec and Kruithoff—he could not recall any specific comment or the first time any such comment was made.[7] "[V]ague, conclusory assertions are insufficient to defeat summary judgment." *Taylor v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 3264(FB)(RML), 2010 WL 4168631, at *2 (E.D.N.Y. Oct. 19, 2010). Here, Plaintiff's vague testimony makes it impossible for this Court to assess the remarks' tendency to show decision-makers' motivations or even that the remarks were invidious at all. To the extent the Court is capable of doing so, it seems unlikely that the required nexus exists. Plaintiff did not testify that any of the comments were made in relation to AWISCO's decision to terminate his employment or its acts to prevent him from joining the Union, and it seems unlikely they were made close in time to either adverse event. Specifically, the record reflects that Plaintiff was on continuous medical leave for three months before the arbitrator ruled against his effort to join the Union and for eight-and-a-half months before his termination. Consequently, Plaintiff could not have been at the loading dock to hear any comments aired immediately before either decision was made.

■ For the reasons stated above, it is clear that none of the arguments made by Plaintiff are sufficient to create the required inference. However, while Plaintiff does not rely on this point in his brief, it is undisputed that his replacement, Ingrassellino, was not a member of Plaintiff's protected class. "The mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001). Accordingly, the Court finds that Plaintiff has established a *prima facie* case of discrimination with regard to his termination. However, this same evidence is not sufficient to establish a *prima facie* case with regard to Plaintiff being denied union membership. In no way did Ingrassellino *replace* Plaintiff as a member of the Union. Indeed, it is undisputed that Ingrassellino remains outside of the bargaining unit. Therefore, the Court grants AWISCO's motion for summary judgment to the ex-

---

7. While Plaintiff claims in his brief that other workers confirmed that "open hostility" existed against minority workers, he does not cite to any specific evidence in support of this argument and the Court sees none in the record.

tent Plaintiff's discrimination claims are based upon his inability to join the Union.

### ii. Step Two—Non–Discriminatory Reason

AWISCO argues that Plaintiff was terminated "because he never provided medical clearance demonstrating his ability to work and because AWISCO needed to and did fill the Dock Helper position." (AWISCO Mem. at 18.) There is evidence in the record to support this argument. It is undisputed that Plaintiff was out of work for eight-and-a-half months on a leave of absence for his injury and that he did not provide AWISCO with medical authorization to return to work until after his termination. (*See* AWISCO 56.1 ¶¶ 27, 35.) An employee's failure to provide medical clearance to return to work is a legitimate, non-discriminatory reason for an adverse job action. *See Allen v. Commercial Pest Control, Inc.,* 78 F.Supp.2d 1371, 1379 (M.D.Ga.1999); *Staffier v. Sandoz Pharm. Corp.,* 888 F.Supp. 287, 292 (D.Mass.1995). Accordingly, the Court finds that AWISCO has carried its burden of articulating legitimate and nondiscriminatory reasons for terminating Plaintiff, thus satisfying the second prong of the *McDonnell Douglas* framework.

### iii. Step Three—Evidence of Pretext

Plaintiff argues that AWISCO's given reason for his termination is pretextual, as "[t]here was no need to fill the position" because "AWISCO was advised by its workers' compensation insurance carrier to offer Beachum [a] return to light duty as early as April, and on October 6, 2008, Beachum called his supervisor and said he was ready to come back to work." (Pl. Opp. at 16.) He contends that the evidence he presented to establish a *prima facie* case plus evidence of pretext is suffi-

cient to survive summary judgment. (*Id.* at 17.)

"A reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks omitted) (emphases in original). Here, the Court finds that Plaintiff would be unable to persuade a factfinder that AWISCO's reason for terminating him was false, let alone that discrimination was the real reason. While Plaintiff alleges that there was no need to fill the position, he admits that he first approached AWISCO about returning to work in October 2008, approximately eight months after he was injured, and after a replacement had already been hired. (*See* AWISCO 56.1 ¶¶ 27–29.) The fact that AWISCO's insurance carrier had earlier informed AWISCO that Plaintiff could return to light duty does not alter this analysis. Plaintiff does not allege that he ever offered to perform light duty and has presented no evidence that a worker capable of performing only light duty would be able to adequately fill the dock helper position. It is not the Court's function to second-guess AWISCO's business decision about the need to fill the position. *See Soderberg v. Gunther Int'l, Inc.,* 124 Fed.Appx. 30, 32 (2d Cir.2005).

Moreover, the evidence that Plaintiff pointed to in his attempt to establish a *prima facie* case does not alter this analysis. As stated above, the alleged disparate treatment and Plaintiff's conclusory, vague statements about racially-motivated jokes are insufficient to establish an inference of discrimination at step one, let alone at step three of the *McDonnell Douglas* framework. In addition, Plaintiff admitted at his deposition that he knew of no non-African-American employees who were out

of work on sick leave as long as he was without being terminated. (*See* Affirmation of Adam Harris filed May 14, 2010, Doc. No. 36, Ex. 10, at 159:3–7.) The fact that Plaintiff's replacement was not a member of his protected class, while barely sufficient to establish a *prima facie* case at the earlier stage, is insufficient to create a triable issue of fact in light of the lack of any other evidence that Plaintiff's termination was because of his race. *See, e.g., Gladwin v. Pozzi*, No. 06 Civ. 650(SCR)(JFK), 2010 WL 245575, at *9, *12 (S.D.N.Y. Jan. 22, 2010).

Accordingly, considering all of the evidence in the record and granting Plaintiff all of the inferences to which he is entitled, the Court finds that Plaintiff has failed to meet his burden in adducing sufficient evidence to support a jury finding that Plaintiff was terminated for discriminatory reasons. AWISCO's motion for summary judgment is therefore granted as to Plaintiff's Title VII, Section 1981, and NYSHRL race discrimination claims.

### 2. Retaliation Claims

#### a. Applicable Law

Plaintiff also brings claims for retaliation under Title VII, Section 1981, and the NYSHRL, alleging that AWISCO retaliated against him for bringing his claim of racial discrimination. (*See* Pl. Opp. at 18.) The Court once again analyzes these claims under the *McDonnell Douglas* burden-shifting framework. *Kaytor v. Elec. Boat Co.*, 609 F.3d 537, 552 (2d Cir.2010).[8]

#### b. Analysis

■ To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) he was engaged in activity protected under Title VII; (2) his employer was aware of the plaintiff's participation in protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer. *See Kaytor*, 609 F.3d at 552.

■ In its motion, AWISCO challenges only Plaintiff's establishment of the fourth element—the existence of a causal connection. (*See* AWISCO Mem. at 21.) Causation can be proven either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000). When a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur "very close" to each other. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). While the Second Circuit has not set a bright-line rule for how much time can pass before a temporal relationship becomes too attenuated, courts in this Circuit "have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (collecting cases).

■ As an initial matter, it is not clear from Plaintiff's brief what exactly he con-

---

**8.** The relevant law for Title VII, NYSHRL, and Section 1981 claims is the same. *See Joseph*, 2010 WL 4513298, at *16 n. 23 (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720, 723 (2d Cir.2010)). As noted previously, Plaintiff's NYCHRL claims will be considered separately in Section C, *infra*.

tends was his protected activity. In its brief, AWISCO assumes that Plaintiff was contending that AWISCO retaliated against him for filing the EEOC complaint. (*See* AWISCO Mem. at 20–21.) To the extent Plaintiff is instead arguing that his protected activity was filing his complaint about not being allowed in the Union (*see* Pl. Opp. at 18), the Court finds that this is an insufficient basis for a retaliation claim, as there is no evidence that AWISCO was placed on notice that his complaint "was directed at conduct prohibited by Title VII." *See Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998). Plaintiff admits that his grievance "did not contain an allegation of race discrimination or retaliation in connection with any employment decisions made by AWISCO" (AWISCO 56.1 ¶ 14) and that "[a]t the hearing, neither the Union nor [the Plaintiff] alleged that [the Plaintiff] was denied membership in the Union on the basis of his race" (*id.* ¶ 17). While Plaintiff's letter to the Union on March 6, 2008 arguably alerted the Union to the fact that his complaint was based on discrimination, there is no evidence and Plaintiff has not argued that this letter was ever shared with AWISCO.

With regard to the EEOC complaint, to the extent Plaintiff relies on the temporal proximity between his filing the EEOC complaint and his termination, the Court agrees with AWISCO that the two events occurred too far apart in time to create an inference of retaliation. Plaintiff filed his complaint with the EEOC on June 6, 2008, more than four months before his termination on October 27, 2008. This is far too much time to create the necessary inference. *See Galimore*, 641 F.Supp.2d at 288. Accordingly, the Court finds that Plaintiff has failed to meet his burden in adducing sufficient evidence to create a *prima facie* case that Plaintiff's termination was retaliatory for protected activity.

In any event, even if Plaintiff could establish a *prima facie* case, AWISCO has presented a non-discriminatory reason for his firing, as discussed above. While sufficient temporal proximity can create an inference of causation at the *prima facie* stage, " 'mere temporal proximity' has been found by this Court to be insufficient to support a claim of retaliation at the summary judgment stage, at least where the defendant proffers a legitimate reason for the plaintiff's discharge with evidentiary support therefor." *Galimore*, 641 F, Supp.2d at 289. Here, where Plaintiff's evidence of temporal proximity is insufficient to even create a *prima facie* case, it is certainly insufficient to permit an inference that Defendant's proffered non-retaliatory reason for his termination is pretextual and that retaliation was a substantial reason for his termination.

AWISCO's motion for summary judgment is therefore granted as to Plaintiff's Title VII, Section 1981, and NYSHRL retaliation claims.

### B. Claims against Local 810

The Union seeks summary judgment on Plaintiff's claims for race discrimination and retaliation pursuant to Title VII, Section 1981, the NYSHRL, and the NYCHRL, and breach of the duty of fair representation, pursuant to Section 301.

### 1. Duty of Fair Representation Claim

The Union argues it is entitled to summary judgment on Plaintiff's claim for breach of the duty of fair representation because he lacks standing to bring the claim, his claim is time barred, and Plaintiff cannot establish a *prima facie* case. (*See* Union Mem. at 1.) The Court will consider each argument in turn.

### a. Standing

The Union argues it should be granted summary judgment on Plaintiff's duty of

fair representation claim because his position was explicitly excluded from the CBA and it therefore owed him no duty. (Union Mem. at 10–11.) In response, Plaintiff argues he has standing because "a long line of case[s] from *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) to the present" establishes the right of individual employees to bring breach of contract/collective bargaining agreement actions. (Pl. Opp. at 26.)

■■■ "Because a union owes no duty to persons who are not members of the bargaining unit, such persons lack standing to assert a claim against the union for an alleged breach of the duty of fair representation." *Scanz v. N.Y. Times,* No. 97 Civ. 1042(PKL), 1997 WL 401816, at *5 (S.D.N.Y. July 16, 1997); *see also Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819, 821 (9th Cir.1985) (same). While the *Smith* line of cases holds that individual members of a bargaining unit have the right to sue for breach of the duty of fair representation, they do not stand for the proposition that non-members can maintain such a suit.[9] In this case, as the Court noted above, the CBA explicitly states that dock helpers are not members of the bargaining unit. (*See* CBA, art. I.) While Plaintiff argued that he was entitled to become a member of the bargaining unit, the Arbitrator did not rule in his favor, and he was never allowed to join the Union, While Plaintiff argues that he performed the work of a pumper, it is undisputed that he did not possess the required license. Therefore, Plaintiff lacks standing to pursue this claim, and the Court will grant the Union summary judgment.

### b. Statute of Limitations

■■■ The statute of limitations on a duty of fair representation claim is six months. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 155, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Phelan v. Local 305 of United Ass'n of Journeymen,* 973 F.2d 1050, 1060 (2d Cir.1992). "A cause of action based on the duty of fair representation accrues when the union members know or reasonably should know that a breach of that duty has occurred." *Eatz v. DME Unit of Local Union Number 3 of Int'l Bhd. of Elec. Workers,* 794 F.2d 29, 30 (2d Cir.1986).

The Union argues that, even if Plaintiff has standing, his claim is untimely, as he should have known of the Union's alleged breach by, at the latest, June 6, 2008— fifteen months before he filed his complaint in this case. (*See* Union Mem. at 11–12.) Plaintiff argues that the statute of limitations period began to run in January 2010, when he first learned that the reason the Union failed to represent him was that Union was only interested in representing drivers at AWISCO. (Pl. Opp. at 26.)

■■■ Plaintiff errs in focusing on when he allegedly discovered the *cause* of the breach. The proper focus, under the precedents in this Circuit, is when a plaintiff discovers that the *breach itself* has occurred. *See, e.g., Ramey v. Dist. 141, Int'l Ass'n of Machinists,* 378 F.3d 269, 278 (2d Cir.2004); *Eatz,* 794 F.2d at 30. The cause of the breach is not material, though of course it plays a role in Plaintiff's cause of action under Title VII. Plaintiff argues the Union breached its duty in

---

**9.** For example, in *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court noted that the "duty of fair representation exists . . . to allow a single labor organization to represent collectively the interests of *all employees within a unit.*" 462 U.S. at 164 n. 14, 103 S.Ct. 2281 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)) (emphasis added).

two ways: (1) "by not bringing the grievance earlier" (Pl. Opp. at 24) and (2) in its "preparation and presentation of Plaintiff's case at the arbitration" (*id.*). Plaintiff certainly had notice of the first possible breach, at the very latest, when the Union finally filed a grievance on March 18, 2008. With regard to the second alleged breach, "[w]here an alleged breach of the duty of fair representation arises out of a union's handling of an arbitration, courts in this Circuit have concluded that the plaintiff knows or reasonably should know that such a breach has occurred when the adverse arbitration award is issued." *Perez v. N.Y's Health and Human Serv. Union 1199/SEIU,* No. 08 Civ. 7940(PKC), 2009 WL 2611940, at *3 (S.D.N.Y. Aug. 25, 2009), *Dennis v. Local 804, L.B.T. Union,* No. 07 Civ. 9754(HB), 2009 WL 1473484, at *3 (S.D.N.Y. May 27, 2009) (same). The adverse award here was issued on May 23, 2008. Since March 18, 2008 and May 23, 2008 are seventeen and fifteen months, respectively, before Plaintiff filed his Complaint, the Court will grant the Union summary judgment on Plaintiff's duty of fair representation claim on the alternative ground that it is untimely.

### c. Failure to Establish *Prima Facie* Case

A "union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild,* 525 U.S. 33, 45, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citation and internal quotation marks omitted). "This wide

range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez,* 525 U.S. at 45–46, 119 S.Ct. 292 (internal quotation marks omitted). "Moreover, tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.2010). Even where the union's actions are "arbitrary, discriminatory, or in bad faith," a cause of action for breach of the duty of fair representation only lies where the union's action " 'seriously undermine[d] the arbitral process.' " *Barr v. United Parcel Serv.,* 868 F.2d 36, 43 (2d Cir.1989) (quoting *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

Plaintiff argues that the Union's actions were "at best perfunctory." (Pl. Opp. at 25.) First, he argues that the Union should have brought his grievance earlier. (*Id.* at 24.) However, it is difficult to see how this in any way undermined the arbitral process, since the claim was eventually presented and rejected by the arbitrator. Moreover, Plaintiff officially applied for membership in the Union in February 2008, less than a month before the Union filed its grievance.

More central to Plaintiff's claim is his argument that the Union's "preparation and presentation of Plaintiff's case at the arbitration" was insufficient. (*See id.*) With regard to the Union's preparation, Plaintiff contends that

> Local 810 General Counsel Michael Lieber admitted during his deposition that his preparation for the grievance was limited to a couple short interviews with Plaintiff and prepping the witness (Lieber Dep., 27); and while he admitted that in preparing for a case he had a

duty to collect as much evidence as possible (Lieber Dep.,43), in Beachum's case his preparation did not include any work such as the verification of the grievant story (Lieber Dep., 16), interviewing the shop steward (Lieber Dep., 18, 44, 57, 58), investigating AWISCO's prior practices of exclusion (Lieber Dep., 40), interviewing other workers (Lieber Dep., 15, 65), or investigation of whether job descriptions at AWISCO existed (Lieber Dep., 49–51). All of these failures were material and adverse to Beachum.

(Pl. Opp. at 24.) At worst, Plaintiff has established that the Union was negligent and/or made an erroneous tactical decision to focus on the contract in preparing Plaintiff's case. At his deposition, Lieber testified that he spent little time on the facts of the case, as they were not in dispute. (*See* June 11 Jefferson Decl., Ex. J. ("Lieber Dep."), at 16.) As Lieber put it, this was a "contract interpretation case." (*Id.* at 44:25.) Even if the decision to focus on the contract language instead of the factual background of the case was a tactical error, "routine tactical decisions ... are insufficient to show a breach of the duty of fair representation," *Nieves v. Dist. Council 37 (DC 37), AFSCME,* No. 04 Civ. 8181(RJS), 2009 WL 4281454, at *11 (S.D.N.Y. Nov. 24, 2009).

With regard to the Union's actions at the arbitration itself, Plaintiff contends that the Union failed to argue that Plaintiff was entitled to membership under Article XXVII of the CBA. (Pl. Opp. at 24–25.) But this contention is expressly contradicted by the record. When Plaintiff's counsel asked Lieber specifically about Article XXVII at his deposition, Lieber said he pointed it out to the arbitrator. (*See* Lieber Dep. at 25:20–22.) Plaintiff also argues that

Lieber admitted he winged Beachum's arbitration with no preparation notes beforehand as to his presentation (at least none that were produced in discovery despite the request) (Lieber Dep., 28), no recollection of utilizing his right to cross-examine the company witnesses (Lieber Dep., 37), in particular asking them of the requirements of Article 27, or even who did testify for the company; Additionally, Lieber admitted he presented no evidence of other non-union workers performing union work (Lieber Dep., 39–40, 43), the agreements in progress to allow Guzman and Saez union membership (Lieber Dep., 41,43), any presentation of corroborating witness to Beachum's performance of union work, including from the shop steward who was present there (Lieber Dep.,44), or AWISCO job descriptions (Lieber Dep.,46), the absence of which caused the Arbitrator to rule against Beachum (Lieber Dep., 49).

(Pl. Opp. at 25.)

The allegation that Lieber admitted he "winged" the arbitration is a grossly unfair characterization of the evidence in the record. Lieber testified that he did more for Plaintiff than other clients (*see* Torres Cert., Ex. 10, at 63–64) and that he "give[s] a fair amount of thought to each and every arbitration" (Lieber Dep. at 28:21–24). The fact that Lieber did not remember what witnesses testified, or whether he cross examined them, is not probative of whether the Union gave Plaintiff proper representation at the arbitration itself. While Plaintiff criticizes Lieber's various other decisions, again they are at worst tactical errors, and they are insufficient to show a breach of the duty.

To the extent Plaintiff argues the Union breached its duty by failing to properly inform him of the arbitration award or describe his right to appeal (*see* Pl. Opp. at

25–26), "the weight of authority within the Second Circuit holds that a union's duty of fair representation simply does not include a duty to appeal an unfavorable arbitration decision," *Nieves*, 2009 WL 4281454, at *10. In addition, it is unclear how any of these actions undermined the arbitral process. The arbitrator found that the dock helper position "is expressly excluded from the bargaining unit by virtue of Article I of the parties' CBA." (Ex. 4, at 2.) As this Court has already written above, this is clear from the plain text of the CBA. The arbitrator's award noted that Plaintiff did not have a pumper's license. (*See* Ex. 4, at 2.) It is undisputed that Plaintiff did not hold that license. Accordingly, the Court will grant the Union summary judgment on Plaintiff's duty of fair representation claim on this ground as well.

### 2. Discrimination Claims

The Union argues that Plaintiff's discrimination claims should be dismissed because, under various precedents in this Circuit, a plaintiff cannot maintain a cause of action against a union under Title VII without a finding that the union breached its duty of fair representation.[10] Plaintiff fails to address this argument in his responsive papers.

▉ "Title VII claims against labor organizations are subject to an analysis different from that applicable to Title VII claims against employers." *Oparaji v. United Fed'n of Teachers*, 418 F.Supp.2d 139, 146 (E.D.N.Y.2006). "[W]here a plaintiff claims that a union violated Title VII based on its failure to represent a member, courts in this Circuit generally incorporate the duty of fair representation as one of the elements of the alleged Title VII violation." *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F.Supp.2d 294, 304

(S.D.N.Y.2000); *see also Ross v. Commc'n Workers of Am., Local 1110*, No. 91 Civ. 6367(LAP), 1995 WL 351462, at *7 (S.D.N.Y. June 9, 1995) ("[T]he issue of whether a union breached its [duty of fair representation] is necessarily involved in determining the validity of . . . a Title VII claim in which an employee complains that her union failed properly to press her grievance against her employer.") This requirement also applies to cases under Section 1981. *See McIntyre v. Longwood Cent. Sch. Dist.*, 658 F.Supp.2d 400, 423 (E.D.N.Y.2009); *Nweke v. Prudential Ins. Co. of Am.*, 25 F.Supp.2d 203, 221 (S.D.N.Y.1998). Similarly, "[s]tate law claims are preempted . . . if they arise out of or are encompassed by a breach of the duty of fair representation." *Marrero v. City of N.Y.*, No. 02 Civ. 6634(DLC), 2003 WL 1621921, at *3 (S.D.N.Y. March 28, 2003).

As stated above, Plaintiff has failed to establish that the Union breached its duty of fair representation. Plaintiff does not allege that the Union had anything directly to do with his termination, other than failing to fairly represent him in his efforts to join the bargaining unit. Accordingly, the Union's motion for summary judgment on Plaintiff's claims under Title VII, Section 1981, and the NYSHRL is granted.

### C. Claims Under the NYCHRL

▉ District Courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction" or "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c). Courts in this district routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all fed-

---

**10.** The Union also argues that Plaintiff has failed to establish a *prima facie* case of both discrimination and retaliation. Because the Court grants the Union summary judgment on the fair representation ground, it does not address the Union's alternative argument.

eral claims. *See, e.g., Mabry v. Neighborhood Defender Serv.,* No. 10 Civ. 4016(PKC), 2011 WL 335867, at *16 (S.D.N.Y. Jan. 31, 2011); *Burchette v. Abercrombie & Fitch Stores, Inc.,* No. 08 Civ. 8786(RMB)(THK), 2010 WL 1948322, at *12 (S.D.N.Y. May 10, 2010). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In addition, discrimination "claims under the City HRL must be given 'an independent liberal construction.'" *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir.2009) (quoting *Williams v. N.Y. City Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

> Given this mandate, courts must now develop and apply an independent legal framework whenever analyzing claims brought under Title 8 of the NYCHRL. This legal framework must take into account "the uniquely broad and remedial purposes" of the City law. Development of this legal framework raises "novel and complex issue[s] of State law," and thus the court has the discretion to decline to exercise supplemental jurisdiction over the NYCHRL claims.

*Guzman v. City of N.Y.,* No. 06 Civ. 5832(KAM)(LB), 2010 WL 4174622, at *26 (E.D.N.Y. Sept. 30, 2010).

In this case, Plaintiff's NYCHRL claims are the only remaining claims after the Court dismissed all claims over which it had original jurisdiction, and they raise novel and complex issues of state law. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims.

### III. MOTIONS TO AMEND

■■■ While Rule 15(a) "'provides that leave to amend shall be freely given when justice so requires, the Court has broad discretion in deciding whether or not to grant such a request.'" *DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ. 318(RJS), 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009) (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,* No. 06 Civ. 12967(PAC), 2008 WL 2414047, at *2 (S.D.N.Y. June 12, 2008)); *see also McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). Factors that are relevant to the exercise of the Court's discretion include: (1) the presence of bad faith, dilatory motives, or undue delay on the part of the movant; (2) the potential for prejudice to an opposing party; and (3) whether the sought-after amendment would be futile. *See, e.g., In re PXRE Group, Ltd., Sec. Litig.,* 600 F.Supp.2d 510, 523–24 (S.D.N.Y.2009). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

■■■ Plaintiff has filed two motions to amend his Complaint. The second contains a reduced number of exhibits to abide by this Court's Individual Practices, but the two motions are substantively identical. (*See* Pl. Am. Mem. Supp. Leave to Am. Compl. at 1.) In each, Plaintiff seeks to amend his Complaint "to add two additional causes of action: breach of contract and violation of the New York Labor Law Section 201–d . . . , plus provide additional factual details supporting the original claims." (Pl. Am. Mem. Supp. Leave to Am. Compl. at 1.) Because the Court has granted Defendants' motions for summary judgment on Plaintiff's federal and

state law claims and the Court has declined to exercise supplemental jurisdiction over Plaintiff's city law claims, this amendment is futile, as it would be subject to immediate dismissal. *See Parada v. Banco. Indus. de Venez., C.A.,* No. 10 Civ. 883(SHS), 2011 WL 519295, at *10 (S.D.N.Y. Feb. 15, 2011). Accordingly, both Plaintiff's motion to amend his complaint and his amended motion to amend his complaint are denied as futile.

The Union's "motion to deny Plaintiff's motion to seek leave to amend the Complaint," while filed as a motion, is simply the Union's opposition papers to Plaintiff's motion. Having denied Plaintiff's motion, the Court denies the Union's motion as moot.

IV. CONCLUSION

For the foregoing reasons, AWISCO's and the Union's motions for summary judgment are GRANTED, except to the extent they seek to dismiss Plaintiff's claims under the NYCHRL; the Court declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims; Plaintiff's motion to amend the complaint and amended motion to amend the complaint are DENIED; and the Union's motion to deny Plaintiff's motion is DENIED.

The Clerk of Court is respectfully directed to terminate the motions located at docket numbers 32, 35, 45, 49, and 54, and to close this case.

SO ORDERED.