## Harned et al. v. Atlas Powder Co.

Feb. 1, 1946.

Adrian H. Terrell and John E. Kirksey for appellants.

David C. Walls, U. S. District Attorney, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Travis Cooper instituted this action in the Mc-Cracken Circuit Court under the Fair Labor Standards Act of 1938, and amendments thereto, 52 Stat. 1060, Chap. 676, 29 U. S. C. A. sec. 201 et seq. (hereinafter referred to as the Act), to recover overtime wages from the Atlas Powder Company (hereinafter referred to

as the Company). It developed that Cooper left the Company's employment before Dec. 27, 1942, the date the Company commenced manufacturing operations, which was the day the Act became applicable in this instance, and the action was dismissed as to him but without prejudice to intervening petitioners. Appellant, Vernon Harned, has intervened and the action was prosecuted in his name with an agreement that the decision would be binding on all other employees similarly situated.

There is no contrariety of fact between the parties and a full and complete stipulation contains not only the facts, but also the issues involved. The law and the facts were submitted to the court who found that the parties came under and are subject to the provisions of the Act, but that under the workweek set up by the Company the appellant was not entitled to the overtime for which he sued, and dismissed the petition. In seeking to reverse the judgment appellant contends that the workweek as established by the Company constitutes an evasion of the Act, therefore the real task confronting us is to determine what is a workweek within the meaning of the Act, which appears to be a question not before decided.

Appellant was a guard in the Company's plant near Paducah, as were the other intervenors now represented by him, where munitions were manufactured for the U. S. Government. Their duties were to protect the manufacturing properties, to see that none but duly authorized persons were on the premises, and that no matches, explosives or dangerous articles were brought into the plant and to maintain peace and order on the premises. It was decided in Timberlake v. Day & Zimmerman, D. C., 49 F. Supp. 28, 31, that guards at a munition plant are engaged "in the production of goods for commerce." The Company admits that as it commenced manufacturing on Dec. 27, 1942, it and appellant were subject to the Act, the pertinent portion of which, 20 U. S. C. sec. 207(a) 29 U. S. C. A. sec. 207(a) reads:

"7(a). No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a work week longer than forty hours * * * unless such employee re-

ceives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.''

Three workshifts were maintained for the guards during each twenty-four hour day. The morning shift worked from 6:30 a. m., to 3 p. m., the evening shift from 2:30 p. m., until 11 p. m., and the night shift from 10:30 p. m., to 7. a. m. The Company established a workweek of seven consecutive days beginning on Wednesday and ending on the following Tuesday which was the pay period for the guards and other employees similarly situated. Appellant worked seven consecutive days on the morning shift, was off two calendar days and then worked seven consecutive days on the evening shift, after which he was off one calendar day before starting the night shift of seven consecutive days, and upon completing this last shift he was off four calendar days until starting on the morning shift again.

By turning to the calendar it will be seen that his employment on the three shifts was so staggered that while he worked seven consecutive days on each shift, he never started a shift on Wednesday, hence his seven consecutive days never came within the Company's workweek. The first day of appellant's employment to which the Act applied was Dec. 27, 1942. He was then off four days and started again on Friday, Jan. 1, 1943, working seven days, then was off Jan. 8 and 9. Returning to work on Jan. 10, he worked seven days until the 16th, when he was off one day, returned to work on the 18th, and worked through the 24th, when he was off four days and returned to work on the 29th.

It seems to be settled that the rulings and interpretations of the Administrator under this Act, although not controlling on the courts, are entitled to much weight due to the fact that the directives from his office are issued for the guidance of both employer and employee. Skidmore v. Swift & Co., 323 U. S. 134, 65 S. Ct. 161, 89 L. Ed. 125. As was said in United States v. American Trucking Ass'n, 310 U. S. 534, 60 S. Ct. 1059, 1067, 84 L. Ed. 1345: ''This is peculiarily true here where the interpretations involved 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the

parts work efficiently and smoothly while they are yet untried and new.' ''

The Administrator of the Wage and Hour Division of the United States Department of Labor in paragraph 3 of Interpretative Bulletin No. 4 of Nov. 1, 1938, 1942, Wages and Hour Manual 104, said: ''3. The 40 hour standard in section 7(a) is a limitation upon the number of hours that may be worked in any work week free of time and one-half overtime compensation. A work week consists of seven consecutive days. It need not coincide with the calendar week, but may begin on any day and at any time of any day. The beginning of the work week may be changed if the change is intended to be permanent and not to evade the overtime requirements of the Act.''

The Secretary of Labor interpreting Executive Order No. 9240 relative to double time on a seventh day, first said that the Order required double time for work on the seventh consecutive day regardless of whether the seventh day came within the work week unless the employee had at least one day off each regularly scheduled work week. 6 Wage and Hour Reporter 98. Then she changed her interpretation to read: ''Although seven consecutive days are worked, if a day of rest is afforded in each work week double time is not required by Paragraph 1A 1. A work week consists of seven days starting with the same calendar day each week. This is the definition of a work week under the Fair Labor Standards Act and is generally accepted in industry.'' 6 Wage and Hour Reporter 98.

Interpretative Bulletin No. 1 issued from the office of the Secretary of Labor as set forth in the 1943 Wage and Hour Manual 642, concerning Executive Order 9240, 40 U. S. C. A. sec. 326 note says:

''* * * double time may be paid only if all seven days fall within the same work week.'' Following this it says:

''A work week consists of seven successive days (see paragraph 8 below) starting on the same calendar day each week. This is the definition of a work week under the Fair Labor Standards Act and is generally accepted by industry.''

The instant action is based on the provision of the Act requiring 150% of pay for time worked in excess of 40 hours in one workweek and not on the provision of Executive Order 9240 that premium wages shall be paid on the seventh day in a workweek. However, the directives and interpretations by the Labor Department as to what constitutes a workweek under the Executive Order necessarily applies to what constitutes a workweek under the Act. Thus it appears that the department charged with the administration of the Act has interpreted it as requiring the employer to establish a workweek of seven consecutive days starting with the same calendar day each week.

Before appellant is entitled to overtime he must labor 40 hours during the workweek established by the Company. The staggering of the three shifts by the Company so that appellant never started work on any shift on Wednesday, the first day of the workweek, does not deny him overtime, although it may prevent him from receiving the maximum overtime to which he would be entitled if we accept his contention that a workweek is any and every consecutive seven days that he labors.

Appellant's regular wage was 80 cents an hour 'for 40 hours and he received $1.20 an hour for overtime. There was not a single shift of his employment that he did not work at least 42½ hours of each workweek for which he drew $1.20 per hour for his 2½ hours overtime. Many weeks in addition to this $3 overtime he drew $10.20 overtime for the sixth day he labored in the regular workweek. His earnings for the 40 hour week at 80 cents were $32 and we see from the stipulation before us that he never earned less than $35, counting his overtime, and that he often went well over $40, and on one occasion his wages and overtime amounted to $50.60.

The Company operated on a "cost-plus a fixed fee" basis, which means that it was reimbursed by the government for all expenditures and then was paid a fixed fee. Common honesty required the Company to keep its expenses for labor and material to a reasonable minimum and it cannot be said with logic that it violated the letter or .spirit of the Act when it inaugurated a workweek of seven consecutive days beginning each Wednesday and so regulated it shifts as to allow appel-

lant to earn overtime each workweek of not less than $3 and not more than $18.60.

If we sustain appellant's contention that any consecutive seven days he labored constitutes a workweek, he would not only be, entitled to recover 50% of his wages for each seventh day worked by him, but an equal amount in liquidated damages and his attorney's fee, under section 16 of the Act—all in the face of the rulings of the Department of Labor to the effect that the Company was complying with the requirements of the Act. After the Department of Labor has issued a directive which says to a contractor, "you are complying with the law," may the employee subsequently come into court and collect overtime of 50% on each seventh day he worked and in addition thereto an equal amount in liquidated damages and his attorney's fees as well? To allow this to be done does not strike a fair mind as being honest, especially when the Company has no personal interest in the matter and is merely attempting to deal fairly with its government, which must reimburse it under their contract for all sums paid for labor.

Appellant insists that under the Act a workweek consists of any seven consecutive days and when the Company inaugurated its workweek beginning on Wednesday and ending on the following Tuesday, and then so staggered its shifts for the admitted purpose of preventing him from working seven consecutive days in any workweek, it violated the Act, citing such cases as Overnight Motor Transportation Co. v. Missel, 316 U. S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682, and Walling v. Helmerich & Payne, 323 U. S. 37, 65 S. Ct. 11, 89 L. Ed. —. As we read these cases, they hold the purpose of the Act was not so much to raise wages as it was to spread work and retard an employer from working men long hours by requiring time and a half to be paid for overtime. "It was to prevent the evil of overwork as well as underpay."

In Missel's case no overtime was paid him because based on the minimum wage provided in the Act the amount he had been receiving took care of his overtime.

The court held this was a violation of the Act and that overtime is based on the regular wage received and not on the minimum wage provided in the Act. In the Walling case the employee's regular work hours each

day were split so that he received two rates of pay for the different hours worked the same day, which resulted in his regular rate of pay being fixed at a fictitious figure, which caused the wages he had been receiving to take care of his overtime. The court held this fictitious figure did not represent the regular rate actually paid the employee and said that no such ingenious mathematical manipulation should be allowed to defeat the statute.

In the instant case the Company did not work appellant long hours and then deprive him of all overtime, as was done by the employers in the Missel and Walling cases, but it merely arranged the workweek and the shifts so as to prevent him from earning an excessive amount in overtime wages to which he thought the Act entitled him.

We agree with the lower court that the workweek established by the Company which began each Wednesday and extended seven consecutive days through Tuesday was no violation of the statute. We further agree with it that the Company in so staggering the shifts upon which appellant worked as to prevent him laboring seven days in any workweek did not violate the statute since he was thus allowed to earn in overtime every workweek practically 10% of his regular 40 hour wage and in most instances it far exceeded that, and on one occasion his overtime exceeded 50% of his weekly wage.

The judgment is affirmed.