# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3380

_____

Roy Abshire, et al.,

        Plaintiffs - Appellants,

v.

Redland Energy Services, LLC,

        Defendant - Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Arkansas.
\*
\*
\*

_____

Submitted: June 14, 2012
Filed: October 10, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

The Fair Labor Standards Act ("FLSA") provides that covered workers employed "for a workweek longer than forty hours" must be compensated "at a rate not less than one and one-half times the regular rate" for work in excess of forty hours. 29 U.S.C. § 207(a)(1). Five current and former employees of Redland Energy Services, LLC ("Redland"), commenced this action alleging that Redland violated this overtime provision by changing the designation of their workweek, but not their work schedule, so that fewer hours qualified as "overtime." Agreeing with a Department

of Labor investigator, the district court[1] found no FLSA violation and granted Redland's motion for summary judgment. Abshire v. Redland Energy Servs., LLC, 822 F. Supp. 2d 874 (W.D. Ark. 2011). The employees appeal, arguing that the district court misinterpreted § 207(a)(1) and an implementing regulation, 29 C.F.R. § 778.105, and that disputed issues of material fact made summary judgment inappropriate. Reviewing the grant of summary judgment *de novo*, we affirm. Grey v. City of Oak Grove, 396 F.3d 1031, 1034 (8th Cir. 2005) (standard of review).

## I.

Redland drills and services natural gas wells in Arkansas. Appellants worked as operators of Redland's two drilling rigs. Each crew of operators worked twelve-hour shifts for seven consecutive days, followed by seven days off. Redland scheduled its thirty-two drill rig employees to work from Tuesdays through Mondays, so they would have one weekend off every two weeks. Prior to the change here at issue, Redland used a Tuesday-to-Monday workweek to calculate overtime owed to drill rig employees. It used a Sunday-to-Saturday workweek for its twenty other employees, who worked a traditional Monday-to-Friday schedule in positions such as truckers, office staff, and operators of other kinds of equipment.

In May 2009, Redland reduced the size of drill rig crews from five operators to four and changed the designation of their workweek from Tuesday-to-Monday to the Sunday-to-Saturday workweek used for other employees. Redland announced the change in a memo distributed to drill rig employees that advised, "There will be no adjustment to your work week, which will remain from Tuesday-Monday [but] you will begin to have a reduction in overtime hours as your work week will be split into 2 payroll periods." Eighteen months later, the five employees filed this lawsuit on

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

behalf of themselves and similarly situated employees who might join the action under the FLSA's "opt-in" procedure. See 29 U.S.C. § 216(b). Plaintiffs alleged that, after this change, they were "only paid twenty (20) hours overtime within the same work week, even though [they] actually worked eighty-four (84) or more hours in each work week."

In support of its motion for summary judgment, Redland presented evidence that putting all employees on the same workweek increased efficiency by reducing the time it takes the office manager to prepare payroll from five to two days a month and decreased payroll expense by reducing the number of hours that drill rig employees must be paid at the FLSA-mandated overtime rate. The employees argued to the district court, as they argue on appeal, that the FLSA prohibits an employer from changing an existing workweek for the purpose of reducing employee overtime, that Redland's true purpose in changing their workweek was to reduce work at overtime rates, and that Redland's claim of administrative efficiencies was pretextual.

## II.

In the FLSA's "maximum hours" provision, 29 U.S.C. § 207(a)(1), "the unit of time . . . within which to distinguish regular from overtime [work] is the week." Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579 (1942). The statute does not define the term workweek. The Department of Labor's regulations have long provided, logically, that it means

> a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. It need not coincide with the calendar week but *may begin on any day and at any hour of the day. . . .* Once the beginning time of an employee's workweek is established, it remains fixed *regardless of the schedule of hours worked by him.*

29 C.F.R. § 778.105 (emphasis added).  Consistent with the plain language of this regulation, numerous federal and state courts have concluded that an employer does not violate the FLSA merely because, under a consistently-designated workweek, its employees earn fewer hours of overtime than they would if the workweek was more favorably aligned with their work schedules.  As one federal court observed:

> [T]he FLSA, standing alone, does not require that the workweek begin on any given day of the week. The Act only requires that the starting day remain constant and that the employees not work more than 40 hours within the 168 hour week without receiving overtime compensation.  To *now* recalculate the hours work[ed] by changing the starting day of the week from Thursday to Saturday would be arbitrary at best and is uncalled for by the Act.

Blasdell v. New York, No. 91-CV-1014, 1992 WL 469733, at *2 (N.D.N.Y. Sept. 8, 1992); accord Oliver v. CenterPoint Energy, Inc., No. H-10-0189, 2010 WL 2163915, at *5 (S.D. Tex. May 27, 2010); Sloat v. Davidson Ore Min. Co., 71 F. Supp. 1010, 1012 (W.D. Mich. 1942); Pappas v. Kerite Co., No. 39378, 1949 WL 660, at *3 (Conn. Ct. Com. Pleas Apr. 27, 1949); Harned v. Atlas Powder Co., 192 S.W.2d 378, 380 (Ky. 1946); Barclay v. Magnolia Petroleum Co., 203 S.W.2d 626, 628 (Tex. Civ. App. 1947).  We agree with these decisions.  We are aware of no contrary authority, except dicta in Seymore v. Metson Marine, Inc., 128 Cal. Rptr. 3d 13, 18 (Ct. App. 2011), a decision applying an overtime provision of the California Labor Code "that may provide employees greater protection than the FLSA."  The description in Seymore of the above-cited FLSA authorities was wrong.  See id. at 19-22.  We decline to afford that decision any weight in construing the FLSA.

Having concluded that the FLSA does not prescribe how an employer must initially establish its "workweek" for overtime purposes, we come to the issue raised in this case -- whether the FLSA limits an employer's freedom to *change* an existing workweek designation.  Again, § 778.105 of the Department of Labor's regulations

directly addresses the issue: "The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act." This sentence makes one limitation clear -- a change must be "intended to be permanent." But that is not at issue here. Appellants have never challenged Redland's contention that the May 2009 change in the oil rig operators' workweek was intended to be permanent. Rather, Appellants argue that Redland's change violated § 207(a)(1) because it was made for the purpose of reducing the number of hours in their normal work schedules that must be paid at the overtime rate, and therefore it was "designed to evade the overtime requirements of the Act."

The caution that a workweek change may not be designed to evade the requirements of § 207(a)(1) has been part of the Department of Labor's interpretive pronouncements since the FLSA was first enacted. See Department of Labor, Interpretative Bulletin No. 4, ¶ 3 (Nov. 1, 1938), cited in Harned, 192 S.W.2d at 380. It was an understandable caution in advising how this initially controversial Act would be construed and applied. Many early FLSA cases dealt with payroll plans devised to evade the Act's new payroll expense obligations. For example, in an early case applying § 207(a), the Supreme Court invalidated a "split-day" compensation plan "so designed as to deprive the employees of their statutory right to receive [overtime pay] for all hours worked in excess of the first regular 40 hours." Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 40 (1944). That decision is now codified in the regulations. See 29 C.F.R. § 501(a). But the Department has never interpreted its general caution that changes to the workweek may not be "designed to evade the overtime requirements," nor has it attempted to clarify what constitutes "evasion."

The precise issue before us was presented, and Appellants' contention persuasively rejected, in a case applying overtime requirements of the Illinois Minimum Wage Law for which administrative regulations including 29 C.F.R. § 778.105 had been adopted. Kerbes v. Raceway Assocs., LLC, 961 N.E.2d 865, 870 (Ill. App. 2011). In Kerbes, the racetrack employer changed its designated workweek

so as to split racing event weekends into two different workweeks, eliminating overtime pay for its part-time hourly employees. Concluding that an employer's right to establish a workweek was "well-settled" by the above-cited cases, the court further concluded the racetrack's

> modification of its workweek did not violate the overtime requirements of the FLSA. . . .[T]he FLSA does not require a workweek schedule that maximizes an employee's accumulation of overtime pay. Thus, a schedule whereby an employee's actual work schedule is split between two workweeks does not violate the federal legislation. If such a schedule does not itself violate the FLSA, we fail to see how a change to such a schedule could be viewed as having been "designed to evade the overtime requirements of this Act."

Id. at 872. We agree with this reasoning.

Appellants argue that a workweek change intended to reduce hours of overtime earned is contrary to the purposes of the FLSA's overtime requirements and is therefore "designed to evade" those requirements. We disagree. Appellants' assumption that an original purpose of the FLSA was to maximize the payment of overtime rates is contrary to more contemporary authority. See Missel, 316 U.S. at 578 ("In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work."). Thus, an employer's effort to reduce its payroll expense is not contrary to the FLSA's purpose. Moreover, Christensen v. Harris Cnty., 529 U.S. 576, 585 (2000), clearly teaches that courts may not imply a prohibition that cannot be found in the Act. Cases involving other FLSA requirements illustrate this principle. For example, in Lamon v. City of Shawnee, 972 F.2d 1145, 1153 (10th Cir. 1992), the court concluded that a public employer's new workweek adopted to take advantage of an FLSA amendment did not violate the Act "[e]ven if [the employer's] sole purpose were to avoid the prospect of paying overtime rates."

And in <u>Morehead v. City of Pearl</u>, 763 F. Supp. 175, 176 (S.D. Miss. 1990), the court noted that a scheduling change intended to reduce overtime hours was not "an evasion" of the overtime requirements; it was "straight-up avoidance" of overtime that the FLSA does not require be paid.

We reject Appellants' contention that an employer's permanent change in the designated workweek violates § 207(a)(1) unless it is justified by a "legitimate business purpose." So long as the change is intended to be permanent, and it is implemented in accordance with the FLSA,[2] the employer's reasons for adopting the change are irrelevant. Accordingly, whether Redland in fact adopted the change in question to achieve administrative efficiencies in calculating and paying wages and overtime, and if so, whether that was a "legitimate business purpose" justifying the change, were not genuine disputes of material fact that precluded the grant of summary judgment in favor of Redland. Fed. R. Civ. P. 56(a).

For these reasons, the judgment of the district court is affirmed.

_____

[2]For example, the regulations specify how to compute overtime when a permanent change results in "overlapping" hours that fall within both the old and the new workweeks. <u>See</u> 29 C.F.R. §§ 778.301-.302.