**John LOPEZ, Plaintiff,**

**v.**

**HOLLISCO OWNERS' CORP., Midboro Management Inc. and Jennifer Santaniello, Defendants.**

14–CV–3738

United States District Court, E.D. New York.

Signed November 30, 2015

---

6.  In light of this determination, it is unnecessary to consider defendant's remaining con-        tentions.

Casimir Joseph Wolnowski, Phillips & Associates, 45 Broadway, Suite 620, New York, N.Y. 10006, 212–248–7431, Email: cwolnowski@tpglaws.com, for John Lopez

Emil A. Samman, Jr., Kagan Lubic Lepper Finkelstein & Gold LLP, 200 Madison Avenue, 24th Floor, New York, N.Y. 10016, 212–252–0300, Fax: 646–442–2337, Email: esamman@kll-law.com, for Hollisco Owners' Corp.

Andreas E. Theodosiou, Braverman Greenspun, P.C., 110 East 42nd Street, 17th floor, New York, N.Y. 10017, 212–682–2900, Fax: 212–682–7718, Email: atheodosiou@braverlaw.net, for Midboro Management Inc., and Jennifer Santaniello

## MEMORANDUM, ORDER AND JUDGMENT

JACK B. WEINSTEIN, Senior United States District Judge:

### TABLE OF CONTENTS

I.  Introduction...73

II.  Facts...74

III.  Procedure...75

IV.  Law...75

  A.  Summary Judgment...75

  B.  Americans with Disabilities Act and New York City Human Rights Law...75

  C.  Fair Labor Standards Act and New York Labor Law...77

V.  Application of Law to Facts...78

  A.  Plaintiff did not suffer an adverse employment action...78

  B.  Plaintiff was not denied overtime compensation...79

  C.  Plaintiff's Motion for Partial Summary Judgment is denied...80

VI.  Conclusion...80

## I.  Introduction

This is a compensation and disability employment discrimination case with no merit.  It proceeds under the mistaken notions that: (i) an employer cannot condition an employee's return to work, after he reports he has a dangerous disease, on production of a doctor's note that he is fit for work; and (ii) that an employer cannot define the work week as running from Saturday to Friday for purposes of compensating overtime.

The case is brought by a former employee, John Lopez, against Hollisco Owners' Corporation ("Hollisco"), Midboro Management, Incorporated ("Midboro"), and Jennifer Santaniello ("Santaniello"). Plaintiff was employed as a porter at a co-op owned by Hollisco.  It was managed by Midboro.  He contends that he was subject to disparate treatment by both defendants as employers on the basis of a perceived disability, and that he was fired in violation of the Americans with Disabilities Act of 1990 ("ADA") and the New York City Human Rights Law ("NYCHRL"). *See* 42 U.S.C. § 12101 *et seq.*; N.Y.C. Administrative Code § 8–107, *et seq.*

He also claims that he was not paid overtime wages in accordance with the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"). *See* 29 U.S.C. § 201 *et seq.*; N.Y. Labor Law Arts. 6 & 19.

The facts do not support plaintiff's claims.  Defendants' motions for summary judgment are granted.  Plaintiff's cross-motions for partial summary judgment and to strike are denied.

## II. Facts

Plaintiff worked as a porter at Hollis Court, a co-op building complex in Queens owned by Hollisco. Pl.'s Responses to Defs.' Rule 56.1 Statements of Undisputed Material Facts, Oct. 2, 2015, ECF No. 31 ("Pl.'s Resp. to Defs.' Rule 56.1 Statement"), at 2. He had worked at Hollis Court for 15 years. His employment ceased in March of 2014. Mem. of Law in Opp'n to Defs.' Mot. Summ. J. & in Supp. of Pl.'s Cross–Mot. Summ. J. & in Supp. of Pl.'s Cross–Mot. to Strike Certain Portions of Def. Santaniello's Aff., Oct. 2, 2015, ECF No. 30 ("Pl.'s Mem. of Law in Opp'n"), at 30. Midboro managed the property. Pl.'s Resp. to Defs.' Rule 56.1 Statement at 2. Defendant Jennifer Santaniello was employed by Midboro as the Property Manager. Id.

Between February 2009 and December 2011, the days on which plaintiff worked changed each week. According to plaintiff, on the first week, plaintiff would work eight hours per day, Monday through Sunday. On the second week, he would work eight hours per day, Wednesday through Sunday. Pl.'s Mem. of Law in Opp'n at 31. Plaintiff's work schedule, as described by him, is as follows:

|      | M | T | W | Th | F | S | Su | M | T | W | Th | F | S | Su | Total |
|------|---|---|---|----|---|---|----|---|---|---|----|---|---|----|-------|
| Wk 1 | 8 | 8 | 8 | 8  | 8 | 8 | 8  |   |   |   |    |   |   |    | 56    |
| Wk 2 |   |   |   |    |   |   |    |   |   | 8 | 8  | 8 |   |    | 24    |

Plaintiff alleges that despite having to work fifty-six hours every other week (that is, Monday to Sunday repeating every other week), he was not paid at a rate of one-and-one-half times his hourly rate for each hour he worked over forty hours. Id. at 33.

The discrimination claim arises from events on February 28, 2014. Plaintiff asked through a text message to speak with his supervisor, Hollisco employee Patrick Reilly. First Mot. Summ. J., Aug. 28, 2015, ECF No. 25, at Ex. F ("Text Messages"), at 6. "I said [to Reilly] I felt like I might have Hepatitis C." Pl.'s Resp. to Defs.' Rule 56.1 Statement at 2.

Santaniello instructed plaintiff to leave the premises and obtain a doctor's clearance before returning to work. Id. at 5. Plaintiff never produced a doctor's note. Pl.'s Resp. to Defs.' Rule 56.1 Statement at 3, 5. He testified that he did not provide a doctor's note because he felt that he should not have to. First Mot. Summ. J. of Midboro & Santaniello, Aug. 28, 2015, ECF No. 25, at Ex. B (Apr. 20, 2015 Dep. of John Lopez) ("Lopez Dep."), at 79:3–19, 81:2–24; Mot. Summ. J. Hr'g Tr., Nov. 12, 2015 ("Hr'g Tr."), at 10:25–11:1.

On March 3, 2014, Defendant Santaniello sent plaintiff a letter on behalf of defendant Midboro Management, which gave notice that without a doctor's note saying he was fit for work he was subject to termination of employment:

This letter is to inform you that the Board of Directors of Hollisco Owners Corp., is notifying you that you are suspended indefinitely, without pay, beginning Friday, February 28, 2014 at 12:00 p.m.

You have been requested by management to provide a letter from your doctor, advising the board of directors that you are fit and able to return back to work full time … Failure to satisfactorily satisfy this request by Friday,

March 22, 2014 may result in the termination of your employment. Pl.'s Mem. of Law in Opp'n at Ex. E.

## III. Procedure

Plaintiff filed charges of discrimination with the Equal Employment Opportunities Commission ("EEOC"). He received a notice of right to sue from the EEOC on May 30, 2014. Pl.'s Mem. of Law in Opp'n at Ex. G, at 14.

The complaint was filed on June 17, 2014. It claims violations of the FLSA and NYLL for failure to pay wages owed for hours worked in excess of forty hours a workweek. It also claims violations of the ADA and the NYCHRL based on the alleged discrimination he suffered due to an actual or perceived disability.

Plaintiff originally alleged that defendants failed to keep employee-specific records documenting hours worked each week, in violation of NYLL § 661 and NYCRR § 142–2.6. He voluntarily dismissed this claim. Hr'g Tr. at 7:25–8:5.

With respect to the issue of Hollisco's "workweek," defendants argue that plaintiff's "workweek" for purposes of labor laws was Saturday to Friday. On a Saturday to Friday workweek, plaintiff's schedule is as follows:

|      | S | Su | M | T | W | Th | F | S | Su | M | T | W | Th | F | Total |
|------|---|----|---|---|---|----|---|---|----|---|---|---|----|---|-------|
| Wk 1 | 8 | 8  |   |   | 8 | 8  | 8 |   |    |   |   |   |    |   | 40    |
| Wk 2 |   |    |   |   |   |    |   |   |    | 8 | 8 | 8 | 8  | 8 | 40    |

With respect to his discrimination claims, Plaintiff argues that he was regarded as or perceived as being disabled. Pl.'s Mem. of Law in Opp'n at 10–13. He contends that he has demonstrated a *prima facie* case of discrimination and is entitled to partial summary judgment. He also moves to strike portions of the affidavit of defendant Santaniello as conclusory in nature; not based on personal knowledge; and containing ultimate facts and legal conclusions. *Id.* at 35.

## IV. Law

### A. Summary Judgment

Summary judgment is granted when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC,* 100 F.Supp.3d 232, 2015 WL 1858997, at *10 (E.D.N.Y.2015) (citing *Capobianco v. City of N.Y.,* 422 F.3d 47, 54–55 (2d Cir.2005)), *appeal dismissed per stipulation,* No. 15–CV1650 (2d Cir. June 15, 2015). "Summary judgment is appropriate ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir.2004) (citations omitted).

### B. Americans with Disabilities Act and New York City Human Rights Law

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The

NYCHRL forbids: "[A]n employer or an employee or agent thereof, because of the actual or perceived ... disability ... of any person ... to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Administrative Code § 8–107(1). It is unlawful "[f]or any person to aid, abet, incite compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." NYC Administrative Code § 8–107(6). Employers are held liable for discriminatory conducts by employees, agents or independent contractors. NYC Administrative Code § 8–107(13).

Claims brought pursuant to the ADA and the NYCHRL are analyzed under a similar burden-shifting framework. *McDonnell v. Schindler Elevator Corp.*, 618 Fed.Appx. 697, 698 (2d Cir.2015); *Rinaldi v. Quality King Distribs., Inc.*, 29 F.Supp.3d 218, 226 (E.D.N.Y.2014). Initially, the plaintiff bears the burden of showing a *prima facie* case of discrimination. *Sherman v. Cnty. of Suffolk*, 71 F.Supp.3d 332, 344 (E.D.N.Y.2014). The elements of a *prima facie* case of disability under the ADA or NYCHRL are that "(1) the employer is subject to the ADA ... or NYCHRL; (2) he suffers from a disability within the meaning of the ADA ... or NYCHRL; (3) he is otherwise qualified to perform his job; and (4) he suffered an adverse employment decision because of his disability." *Brown v. The Pension Bds.*, 488 F.Supp.2d 395, 405–06 (S.D.N.Y. 2007).

To meet this initial burden on a summary judgment motion, "a plaintiff must present more than mere conclusory allegations. Rather, a plaintiff must provide specific information detailing the nature and length of the limitation, together with supporting medical evidence regarding the duration and severity of the impairment's impact on the major life activity at issue." *Levine v. Smithtown Cent. Sch. Dist.*, 565 F.Supp.2d 407, 423 (E.D.N.Y.2008); *see also Duprey v. Prudential Ins. Co. of Am.*, 910 F.Supp. 879, 882 (N.D.N.Y.1996) ("For a discrimination plaintiff to survive a motion for summary judgment, [ ]he must do more than present conclusory allegations of discrimination ... [ ]he must offer concrete particulars to substantiate h[is] claim." (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985))). "[A]n extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir.2006).

If the *prima facie* case is established, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for terminating his employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to satisfy this burden, the defendant needs to "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Duprey*, 910 F.Supp. at 883; *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006) ("the employer must offer through the introduction of admissible evidence a legitimate nondiscriminatory reason for the discharge"). "[I]n determining whether the articulated reason for the action is a pretext, a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related ac-

tion." *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F.Supp.3d 289, 304 (S.D.N.Y.2014) (internal citation omitted).

"[T]he final burden rests on the plaintiff to prove that the proffered nondiscriminatory reason was pretextual and that the defendant discriminated against the plaintiff." *Fronczak v. N.Y. State Dep't of Corr. Servs.*, 2 Fed.Appx. 213, 217 (2d Cir.2001).

■■■ The ADA permits an employer to require a medical examination and to make inquiries as to an employee's medical condition where the examination or inquiry "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). In order to show a "business necessity,"

> an employer must show more than that its inquiry is consistent with "mere expediency." An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted "business necessity" is vital to the business. For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism. The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary. The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal.

*Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir.2003).

## C. Fair Labor Standards Act and New York Labor Law

■■■ "To establish liability under the FLSA and NYLL on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Eschmann v. White Plains Crane Serv.*, No. 11–CV–5881, 2014 WL 1224247, at *4 (E.D.N.Y. Mar. 24, 2014) (internal citations omitted).

Both the FLSA and NYLL require employers to pay overtime to employees who work in excess of forty hours per *workweek*. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142–2.2; *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 78 (2d Cir. 2003) (claim under 29 U.S.C. § 207 is analogous to a claim under 12 N.Y.C.R.R. § 142–2.2).

The Code of Federal Regulations provides a definition of a workweek: "An employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24–hour periods. It need not coincide with the calendar week but *may begin on any day and at any hour of the day*." 29 C.F.R. § 778.105 (emphasis added). A standard and repeating Monday to Friday 40–hour week is not required. *See Abshire v. Redland Energy Servs.*, 695 F.3d 792 (8th Cir.2012).

The Court of Appeals for the Eighth Circuit has explained that "[c]onsistent with the plain language of this regulation, numerous federal and state courts have concluded that an employer does not violate the FLSA merely because, under a consistently-designated workweek, its employees earn fewer hours of overtime than they would if the workweek was more favorably aligned with their work schedules." *Id.* at 794. "[T]he FLSA, standing alone, *does not require that the workweek begin on any given day of the week*. The Act only requires that the starting day remain constant and that the employees

not work more than 40 hours within the 168 hour week without receiving overtime compensation." *Id.* (quoting *Blasdell v. N.Y.,* No. 91–CV–1014, 1992 WL 469733, at *2 (N.D.N.Y. Sept. 8, 1992) *on reconsideration sub nom. Blasdell v. N.Y.,* No. 91–CV–1014, 1992 WL 321545 (N.D.N.Y. Oct. 29, 1992)) (emphasis added); *see also Johnson v. Heckmann Water Res. (CVR), Inc.,* 758 F.3d 627, 633 (5th Cir.2014) ("the FLSA requires only that a workweek be a fixed and regularly recurring period of 168 hours—seven consecutive 24–hour periods") (internal quotations omitted).

## V. Application of Law to Facts

Defendants' request that plaintiff provide a doctor's note medically clearing him for work after plaintiff himself reported that he might have Hepatitis B or C was reasonable. Ensuring that employees at a residential building do not pose a health risk to residents is a business necessity for purposes of the ADA. The evidence demonstrates that plaintiff was not fired as a result of a perceived disability. Rather, he voluntarily abandoned his job, choosing not to provide the requested doctor's note because he felt he did not have to do so.

With respect to plaintiff's overtime compensation claims, although plaintiff's work schedule did require him to work seven days in a row every other week, because those seven days spanned two "workweeks," he is not entitled to the overtime payments he seeks.

## A. Plaintiff did not suffer an adverse employment action

The record demonstrates that plaintiff's firing was not due to his perceived Hepatitis status. He failed to return to work with a doctor's note. Plaintiff chose not to provide the requested doctor's note because, he testified, he felt that he did not have to. *See* Hr'g Tr. at 10:25–11:1. By deciding he did not have to provide the requested doctor's note, plaintiff effectively abandoned his job. "An employee's failure to provide medical clearance to return to work is a legitimate, non-discriminatory reason for an adverse job action." *Beachum v. AWISCO N.Y.,* 785 F.Supp.2d 84, 97 (S.D.N.Y.2011); *see also Aka v. Jacob K. Javits Convention Ctr.,* No. 09–CV–8195, 2011 WL 4549610, at *17 (S.D.N.Y. Sept. 30, 2011) ("Both an employee's failure to provide ... a certification and an employer's need to maintain a staff that is capable of working have been recognized as legitimate, nondiscriminatory reasons for an adverse employment action."); *cf. Gajda v. Manhattan & Bronx Surface Transit Operating Auth.,* 396 F.3d 187 (2d Cir.2005) (transit authority's requests for bus driver's HIV-related laboratory tests were "consistent with business necessity," and thus permissible under ADA); *Rosenquist v. Ottaway Newspapers, Inc.,* 90 Fed.Appx. 564 (2d Cir.2004) (employer's decision to subject employee to independent medical examination when he sought to return to work as a reporter after suffering a stroke was justified by business necessity, and thus was not an unlawful medical inquiry under the ADA); *Desano v. Blossom S., LLC,* No. 07–CV–6481, 2009 WL 5167647, at *3–4 (W.D.N.Y. Dec. 18, 2009) (in case involving plaintiff who delivered food, "[d]efendant's inquiry [including asking for doctor's note] into the basis for [p]laintiff's request to be out on sick leave because he thought he was contagious, was, accordingly, for a legitimate business reason"); *Diaz v. Transatlantic Bank,* 367 Fed.Appx. 93, 97–98 (11th Cir.2010) (court held that employer's termination of employee because she failed to provide medical clearance at the end of her medical leave was not a pretext for discrimination and did not support employee's ADA claim); *Parker v. Pulte Homes of Tx., L.P.,* No. H–09–2743, 2011 WL

767182, at \*10 (S.D.Tex. Feb. 25, 2011) (court held that employer's decision to prohibit employee from working until she underwent a medical examination and submitted a doctor's note was consistent with business necessity).

Plaintiff worked as a porter at a residential building. He was continuously in contact not only with the other service employees at the building, but also with residents, including elderly individuals and young children. He testified that his position required him to perform a host of maintenance activities around the co-op. Lopez Dep. at 7:2–18. Plaintiff's job also often resulted in him suffering cuts and bruises. First Mot. Summ. J., ECF No. 25–2 (Aug. 27, 2015 Jennifer Santaniello Aff.) ("Santaniello Aff."), at ¶ 10; Lopez Dep. at 46:6–49:3. He might enter residents' apartments at some point during the course of his day. *See* Lopez Dep. at 26:7–14.

In light of the character of plaintiff's job, it was reasonable for his employer to ensure that he was capable of performing his work without any risk that he might infect others. Defendants, who are not doctors, were not required to know the specific risks of the illness plaintiff reported. Defendants' request that plaintiff leave the premises and obtain a doctor's note clearing him for work, and subsequently terminating his employment when he failed to return to work, was based on a legitimate, non-discriminatory reason. With respect to plaintiff's ADA claims, defendants' actions fall within the business necessity exception.

There is no evidence that any other employee would be, or was, treated differently. There is no evidence of pretext. Summary judgment in favor of defendants on these discrimination claims is warranted.

**B. Plaintiff was not denied overtime compensation**

The only challenge to the payroll records and time sheets defendants submitted is that they were submitted with a brief on reply rather than with defendants' moving papers. The court is preferable to decide cases on the merits, rather than on possible procedural errors. It exercises its discretion to consider the records as evidence. *See Lorber v. Winston,* No. 12–CV–3571, 2012 WL 5904522, at \*13 (E.D.N.Y. Nov. 26, 2012) (exercising discretion to consider reply declaration). They are complete, accurate and compelling.

Plaintiff's overtime claims stem from a misunderstanding of what his "workweek" was for purposes of federal and state labor laws. Because the instances when he worked seven days in a row spanned two "workweeks," he is not owed additional overtime compensation.

Plaintiff's "workweek" for overtime purposes ran from Saturday to Friday. Specifically, defendants' payroll records indicate that was employees' workhours beginning from January 2, 2009. *See* Hollis Court Payroll, Nov. 5, 2015, ECF No. 41–1. The time sheets included list the week running from Saturday to Friday. Pay stubs, which plaintiff received with each paycheck, specify that the pay period ended on Friday.

In addition to the documentary evidence, Santaniello submitted an affidavit stating that the co-op's workweek was from Saturday to Friday, and that she had been told this had been the case for seven years prior to her arrival in 2012. Santaniello Aff. at ¶ 5; *see also* Hr'g Tr. at 12:7–15. Her testimony on this point at the summary judgment hearing was unchallenged.

Because plaintiff's "workweek" was from Saturday to Friday, his consistent 40–hour work schedule was as follows:

| | S | Su | M | T | W | Th | F | S | Su | M | T | W | Th | F | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wk 1 | | | 8 | 8 | 8 | 8 | 8 | | | | | | | | 40 |
| Wk 2 | | | | | | | | 8 | 8 | | | 8 | 8 | 8 | 40 |

As the diagram shows, plaintiff worked a seven-day period from Monday to Sunday. Because that time was split between two "workweeks," for overtime compensation purposes he worked 40 hours each workweek. Plaintiff concedes that under this analysis he is not entitled to any additional compensation. Pl.'s Mem. of Law in Opp'n at 33.

It is important to permit employers to exercise flexibility in scheduling their employees' workweek. Under Hollisco's defined workweek, defendants were able to ensure that at least one porter was always present on weekends, while spreading the burden of working on Saturday and Sunday among employees.

### C. Plaintiff's Motion for Partial Summary Judgment is denied

Plaintiff has failed to show that he is entitled to summary judgment on his claims of discrimination. *See supra* Part V.A.

## VI. Conclusion

Defendants' motions for summary judgment are granted. Plaintiff's cross-motion for partial summary judgment is denied. Plaintiff's motion to strike is denied as moot. The case is dismissed without costs or disbursements. The Clerk of the Court is directed to enter judgment in favor of defendants.

SO ORDERED.